In re Barbara Ann MOORE, a/k/a Barbara Ann Mayo a/k/a Barbara Ann McMullen, Debtor.

Barbara Ann Moore, Plaintiff,

v.

Samuel L. Jencks, Jr., Defendant.

Bankruptcy No. 98–10075.
Adversary No. 98–1053.

United States Bankruptcy Court, D. Maine.

March 8, 1999.

Wm. Thomas Hyde, Skowhegan, ME, for plaintiff Moore.

Samuel L. Jencks, Jr., Athens, ME, defendant pro se.

### Memorandum of Decision

JAMES B. HAINES, Jr., Chief Judge.

Before me for decision after trial is Barbara Moore's adversary complaint seeking damages and injunctive relief against Samuel Jencks, a non-attorney bankruptcy petition preparer. For the reasons set forth below, I conclude that Jencks must show cause why he should not be fined for violating § 110(f)'s prohibition on advertising his services using terms similar to "legal";

that Jencks's actions warrant certification to district court for an award of damages, fees, and costs pursuant to § 110(i); and that an injunction will issue to prevent Jencks from ongoing violations of § 110.[1]

### Facts

Moore was named personal representative of the estate of Ralph J. Nichols under Nichols's will. She was also the will's principal beneficiary. Nichols's sister, Lelia Brooks, prosecuted a successful *quantum meruit* claim against the estate and in June 1996 obtained a $24,304.00 judgment.

Moore, with a less-than-sophisticated grasp of the situation, believed that judgment had entered against her personally. After a time, without funds to pay the judgment in the foreseeable future, she considered bankruptcy.

Moore was then represented by Attorney Thomas Hyde in connection with a personal injury claim, but in December 1997 she sought out Jencks, an "independent paralegal" conducting business in the Skowhegan, Maine, area. Although Jencks then advertised, and continues to advertise, his services in local newspapers under the heading "Paralegal Services of Maine," Moore learned of him by word-of-mouth. Jencks met her at her mobile home, consulted with her and left a "bankruptcy questionnaire" for Moore to complete.

During the course of their initial conference, Jencks explained that he was a "paralegal," not a lawyer, that he could not provide "legal advice," and that he could not "represent" Moore "in court." He explained that he held an Associates Degree in paralegal studies from a Bangor business college and that he had previously worked under the supervision of attorneys at Pine Tree Legal Services and, later, as one of several independent paralegals at an enterprise known as "Penobscot Paralegals." He provided Moore with a "Notice to Consumer Debtors" describing the differences among chapters 7, 11, 12, and 13 (probably read the form to her, as well),[2] asked Moore to consider the information, and choose the chapter under which she wished to obtain bankruptcy relief. She circled Chapter 7.[3]

Jencks next provided Moore with a photocopy of Title 14 of the Maine Revised Statutes Annotated, § 4422, Maine's exemption statute, which lists categories and values of property that debtors may claim exempt in bankruptcy, and read it to her. He left Moore with the photocopy and his questionnaire, explained that he would prepare her bankruptcy documents on the basis of her answers to the questionnaire. He told Moore that she could retain his services for his standard flat-fee of $300.00. Moore was to complete the questionnaire, including its final page certification of accuracy, and to let Jencks know if he was to "apply" Maine's exemptions to her bankruptcy documents. Jencks indicated his availability to answer questions that Moore might have in the course of completing the questionnaire.

1. This memorandum sets forth findings of fact and conclusions of law in accordance with Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52. Unless otherwise indicated, all references to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101 *et seq.*

2. Once a required component of a bankruptcy petition, this full-page notice containing a summary of the chapters and a place for the debtor's signature is no longer an official form. On Form 1 of the official Chapter 7 forms, debtors now sign a one sentence statement that they understand the differences among the chapters and have decided to proceed under Chapter 7. Jencks included the signed full page notice with Moore's petition for filing.

3. Jencks only assists Chapter 7 debtors in view of this court's opinion in *Fessenden v. Ireland (In re Hobbs)*, 213 B.R. 207 (Bankr. D.Me.1997) (determining that preparation of Chapter 13 plan constituted "practicing law"). He informed Moore of that limitation on the availability of his services *before* he provided her the form explaining the differences among bankruptcy chapters.

Moore called Jencks a time or two as she worked through the questionnaire. Among other things, she had questions about how or whether she should disclose the personal injury claim on which she had consulted counsel. In so many words, Jencks told her that if she actually had a "claim," which he explained meant that if suit had been filed, she had to list it. Because Moore's attorney had told her that she would be required to pay certain costs before he could file suit, and because she had not by then done so, Moore decided (based on Jencks's advice) that the claim need not be listed.[4]

In response to Moore's questions, Jencks assured her that she could retain her mobile home by reaffirming debts secured by liens on it and that Lelia Brooks's $24,304.00 judgment would be "wiped out" by the bankruptcy discharge.

Moore had other questions, as well, one of which was not "cleared up" as easily. She explained to Jencks that she owned an (unencumbered) Toyota automobile worth about $14,000.00, that she wanted to keep it, but that she was concerned about the limited ($2,500.00) motor vehicle exemption provided by Maine law. She also expressed concern about obtaining the $475.00 (total) that she would need to pay for Jencks's services and to file her petition. Jencks advised her to get another opinion about the car's value. He also suggested that it might be traded for one of lesser value (producing funds to pay his fee and the filing fee) or that it might be sold. He told Moore she could "sell anything she wanted before bankruptcy" as long as it was disclosed, but that she could "sell nothing" after she filed her petition. Before she filed, and before her last meeting with Jencks, Moore "sold" the car to her daughter for $500.00, expecting to "buy it back" later. Although Jencks may not have expressly suggested that ploy, Moore plainly acted in response to, if not in reliance upon, information Jencks gave her.[5]

Moore completed the questionnaire and returned it to Jencks. Drawing on her answers, Jencks completed the bankruptcy petition, schedules, and statement of affairs. He returned the completed documents to Moore, explaining to her that she should read them over carefully to assure their completeness and accuracy before signing them and sending them to the bankruptcy court. He assured Moore that the completed forms contained only information taken from her written answers to the questionnaire. Comfortable that they had been over the questions thoroughly, Moore signed the documents without reading them through a final time.[6]

Moore's filings with the bankruptcy court declared her intention to reaffirm the mortgage obligations secured by her mobile home; scheduled the Lelia Brooks judgment, listing the Nichols estate as a "co-obligor"; claimed Maine exemptions as to all personal property; made no mention whatsoever of the Toyota, its disposition or the resulting proceeds; and omitted any reference to Moore's personal injury claim.

Moore had no secured debts except her mobile home mortgages. She had no priority debts. Aside from the judgment (scheduled as owed to Brooks and, separately, to Brooks's attorney), Moore had only one other unsecured creditor, Publisher's Clearing House, to whom she owed a total of $41.80.

4. Both Jencks and Moore expressed the opinion that existence of a docket number for a filed civil action was determinative of the question whether there existed a claim required to be disclosed on Moore's schedules. Notes from Jenck's file refer to "possible lawsuit" and indicate he informed her "if [in] suit, must list, if not don't." (Ex. G.)

5. Jencks's notes show that he and Moore discussed the Toyota sale in a post-creditors' meeting conversation. At that point, Moore complained to him that her "daughter would not sell her car back." (Ex. G.)

6. Moore overlooked affixing her signature to Official Form 1. The clerk issued a filing deficiency notice and Moore rectified the problem.

In the course of the meeting of creditors, the trustee's questions uncovered, among other things, the existence of Moore's unscheduled, unliquidated personal injury claim. Concerned that she might be denied a Chapter 7 discharge, Moore stopped by to consult Attorney Hyde on her way home from the § 341 meeting. After reviewing the situation, Attorney Hyde realized that the Brooks judgment itself created no *personal* liability for Moore and that her bankruptcy filing was ill-considered. On Moore's behalf, he moved to dismiss the bankruptcy case.[7] I granted the motion pursuant to § 707(a).

## Discussion

### 1. What's Before Me and What Isn't

█ The order dismissing Moore's bankruptcy case expressly provided "that this court shall retain jurisdiction to consider any and all matters which may be raised concerning violations of § 110 of the Bankruptcy Code by the non-attorney petition preparer who originally prepared the debtor's petition and schedules." (Order of May 11, 1998; Court Doc. No. 11.)

Moore's complaint presents her claims in two counts. Count I seeks varied relief under § 110, including a prayer for a § 110(i) damages award and a prayer for a § 110(j) injunction. Count II asserts that, notwithstanding disclaimers, Jencks provided Moore with legal advice, and did so unlawfully and incompetently, warranting judgment for damages under a common law theory of (para)legal malpractice.

Only Count I is properly before me. Putting aside the question whether I could exercise jurisdiction over Moore's malpractice claims if I wished, the fact of the matter is that in dismissing Moore's Chapter 7 case I exercised discretion to retain jurisdiction only over § 110 claims. That closed the book on claims such as those set forth in Count II. At this stage, I have no power to adjudicate those issues. *Cf. In re DN Assocs.*, 165 B.R. 344, 346–47 (Bankr. D.Me.1994) (discussing concept of retained jurisdiction in context of Chapter 11).[8]

### 2. The § 110 Claims

#### a. The Statutory Context

█ To begin, Jencks does not dispute that he is a "bankruptcy petition preparer" as defined in § 110(a)(1).[9] As I observed in *In re Hobbs*, § 110 was enact-

---

7. At hearings on Moore's motion to dismiss her Chapter 7 case, Hyde expressed the opinion that it was possible that the circumstances giving rise to the judgment against the Nichols estate might, at some point, form the basis for Moore's personal liability and asked that dismissal be "without prejudice" so that Moore might, if necessary, file a voluntary petition in the future. (Hr'g Tr. May 7, 1998, at 8.)

8. If there were a bankruptcy estate it is conceivable that I would have "related to" jurisdiction over Moore's state law claims. However, with her case dismissed, no such foothold exists. The resolution of the state court claims in not "related to" the bankruptcy. *See cf. Adams v. Hartconn Assocs., Inc. (In re Adams)*, 212 B.R. 703, 714–15 (Bankr.D.Mass. 1997) (concluding it had no jurisdiction over state fair trade practice law claims, stating, "[b]ankruptcy courts do not have jurisdiction over postpetition matters which are unrelated to the bankruptcy estate"); *Goldstein v. Midland Bank, N.A. (In re Goldstein)*, 201 B.R. 1, 5–7 (Bankr.D.Me.1996) (determining that it had no jurisdiction over discharged debtor's Fair Debt Collection Practice Act and tort claims for creditor's post-petition conduct, in that the claims did not arise under or arise in the bankruptcy case, and they were not "related to" the bankruptcy because the outcome could have no conceivable effect on the estate); *Boyajian v. DeLuca (In re Remington Dev. Group, Inc.)*, 180 B.R. 365, 368 (Bankr. D.R.I.1995) (dismissing the third-party complaint by a creditor of debtor against attorney because it could have no tangible effect on the estate, also concluding that bankruptcy courts may not invoke supplemental jurisdiction).

9. Under § 110, a " 'bankruptcy petition preparer' " is a "person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." § 110(a)(1). A " '[d]ocument for filing' means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a [bankruptcy case]." § 110(a)(2).

ed because, in Congress's view, the proliferation of non-attorney bankruptcy petition preparers created significant risks that debtors might be taken advantage of by unregulated, unscrupulous individuals offering them assistance and that debtors might receive and rely on "legal" advice given by uninformed nonprofessionals, *see* 213 B.R. at 210 & n. 11 (quoting legislative history):

> Section 110 addresses a very real concern. Although lawyers are subject to competency requirements and character assessments before they may practice law, petition preparers are presently subject to no regulation or licensing procedures. In addition, attorneys can be disbarred, suspended or otherwise sanctioned if they fail to obey the ethical rules promulgated by the Maine Supreme Judicial Court and adopted by the U.S. District Court of Maine. When a lawyer's conduct breaches the professional standard of care and damage results, the common law provides relief. In the bankruptcy context, § 110 fills the breach by providing statutorily-defined regulation of non-attorneys whose work significantly affects debtors and the business of this court.

*Id.* at 211 (citations and footnotes omitted). The statute is intended, and in this court will operate, as a consumer protection device, not as a restraint on competition. *See Ferm v. United State Trustee (In re Rausch)*, 213 B.R. 364, 369 (D.Nev.1997); *Consumer Seven Corp. v. United States Trustee (In re Fraga)*, 210 B.R. 812, 818–19 (9th Cir. BAP 1997); *In re Hobbs*, 213 B.R. at 210; *Marshall v. Bourque (In re Hartman)*, 208 B.R. 768, 776 (Bankr. D.Mass.1997).[10]

Indeed, as I have previously observed, the notion that petition preparers and attorneys are in competition with each other is (for the most part) unfounded:

> Petition preparers do not compete with attorneys.... [T]hey provide none of the expertise and legal advice that attorneys offer. Petition preparers' amenability to civil damages actions analogous to malpractice actions is questionable. As far as I can tell, their clients are unprotected by insurance or other funds. What petition preparers offer overlaps with what attorneys offer only insofar as forms are prepared for filing. If debtors perceive that petition preparers compete with attorneys, offering similar services for lower prices, two concerns about the legitimacy of that perception arise. The first, which bears directly on petition preparers and this court, is that petition preparers may not advertise or promote what they offer as anything more than the bare bones organizational assistance and document preparation services they are. If their advertising and promotion creates confusion in this regard, §§ 110(f) & (i) provide[ ] remedies.... The second concern bears on the way that attorneys treat their clients. If a bankruptcy attorney provides little more to his or her clients

---

**10.** I explained the statute's objective in *In re Hobbs:*

> Although criticized by some non-lawyers as "a thinly-veiled attempt to protect the professional domain of lawyers and to exclude non-lawyers from making a living in the bankruptcy arena," § 110 is "primarily ... a consumer protection measure unrelated to the practice of law." *United States Trustee v. PLA People's Law–Arizona, Inc. (In re Green)*, 197 B.R. 878, 879 (Bankr.D.Ariz. 1996); *see also Marshall v. Bourque (In re Hartman)*, 208 B.R. 768, 776) (Bankr. D.Mass.1997) (recognizing § 110 as "a consumer protection measure to deter and provide remedies for perceived abuses and the unauthorized practice of law by an increasingly large number of non-lawyers who were advising and assisting debtors in filing bankruptcy petitions."); *In re Rausch*, 197 B.R. 109, 116 (Bankr.D.Nev.1996) (citing legislative history of § 110(c)); *Ross v. Smith (In re Gavin)*, 181 B.R. 814, 820–21 (Bankr.E.D.Pa.1995) (reviewing tools available to bankruptcy courts in monitoring assistance provided debtors by non-lawyers prior to enactment of § 110, concluding § 110 was enacted to provide supplemental remedies).

> *In re Hobbs,* 213 B.R. at 210 (footnote omitted).

than document preparation services, then he or she should have to compete with those who do only that, but for a lower price. Given the legal issues that regularly arise in all but the simplest bankruptcy cases, I expect attorneys to do much more.

*Consolidated Memorandum Regarding Bankruptcy Petition Preparers*, 1997 WL 615657, at *3 (Bankr.D.Me. Sept. 19, 1997).

### b. The Issues in Contest

#### 1.   § 110(i)

■ The heart of Moore's case is her complaint that Jencks violated § 110(i) and that, as a consequence, she is entitled to damages. Section 110(i) provides:

(i)(1) If a bankruptcy case or related proceeding is dismissed because of the failure to file bankruptcy papers, including papers specified in section 521(*l*) of this title, the negligence or intentional disregard of this title or the Federal Rules of Bankruptcy Procedure by a bankruptcy petition preparer, or if a bankruptcy petition preparer violates this section or commits any fraudulent, unfair, or deceptive act, the bankruptcy court shall certify that fact to the district court, and the district court, on motion of the debtor, the trustee, or a creditor and after a hearing, shall order the bankruptcy petition preparer to pay to the debtor—

(A) the debtor's actual damages;

(B) the greater of—

(i) $2,000; or

(ii) twice the amount paid by the debtor to the bankruptcy petition preparer for the preparer's services; and

(C) reasonable attorneys' fees and costs in moving for damages under this subsection.

(2) If the trustee or creditor moves for damages on behalf of the debtor under this subsection, the bankruptcy petition preparer shall be ordered to pay the movant the additional amount of $1,000

plus reasonable attorneys' fees and costs incurred.

§ 110(i)(1)–(2).

Moore's case was not dismissed on account of a failure to file required papers or on account of Jencks's negligence or disregard of the rules. Moore herself (as opposed to a bankruptcy trustee or creditor) seeks damages. Thus, the portion of § 110(i) germane to her claims is reduced to that part of § 110(i)(1) that provides a damages remedy if the "petition preparer violates this section or commits any fraudulent, unfair, or deceptive act." § 110(i)(1).

In *In re Hobbs* I concluded that a petition preparer had engaged in the unauthorized practice of law when he explained the differences between chapters 7 and 13, assisted debtors in selecting exemptions, drafted a Chapter 13 plan, and advised debtors how to treat ongoing obligations secured by their house and car. *See* 213 B.R. at 218. Together with other actions (*e.g.*, holding himself out as a "paralegal" with bankruptcy experience, violating § 110 in multiple ways), I determined that he had engaged in " 'fraudulent, unfair, or deceptive' " practices and had violated § 110(i). *Id.*

To his credit, Jencks has not treated the Code's requirements as cavalierly as did the petition preparer in *In re Hobbs*. Jencks provided the information, *see* § 110(b)–(c), and attestation, *see* § 110(h), that the statute requires. This case poses a problem of a different stripe: Jencks, through advertising, personal interviews, and, indirectly, by the amount and structure of fees he charged for his services, led Moore to believe he had knowledge and expertise to provide her (above and beyond "bare bones organizational assistance and document preparation services"). *Consolidated Memorandum Regarding Bankruptcy Petition Preparers*, 1997 WL 615657, at *3. Moore looked to him to prepare her bankruptcy documents and, as well, for guidance on questions of bankruptcy rights and obligations.

**8**

Jencks gave her legal advice. He opined that a Chapter 7 discharge would benefit Moore under her then-existing circumstances. Working from her questionnaire, he selected her exemptions. He explained to her his view of a "claim" that might or might not be an asset of her bankruptcy estate. He advised her that, until her petition was filed, she was free to dispose of assets as she chose, so long as she disclosed those dispositions. *See In re Kaitangian*, 218 B.R. 102, 108–13 (Bankr. S.D.Cal.1998) (examining how preparer's advice to debtors regarding state exemption laws, selection of chapters, reaffirmations, timing of filing, and dischargeability of student loans "far exceeded typing services" and constituted unauthorized practice of law); *United States Trustee v. Tank (In re Stacy)*, 193 B.R. 31, 38–40 (Bankr. D.Or.1996) (suggesting values for personal property based on statutory amounts, advice on the inclusion of personal property on schedules, suggestion that debtor schedule a car not yet purchased, suggestion vis-a-vis exemptions, advice on selecting chapters, classification of debts, among a litany of instances of unauthorized practice of law by a petition preparer).[11]

■ Jencks was practicing law without a license. Selling legal advice is plainly within the reach of Maine's statutory prohibition of unauthorized law practice.[12] And I hold without qualification that a bankruptcy petition preparer's unlawful dispensation of legal advice constitutes a "fraudulent, unfair, or deceptive act" within the meaning of § 110(i)(1). *See In re Hobbs*, 213 B.R. at 218 & n. 25 (petition preparer's engagement in the unauthorized practice of law forming part of the basis for § 100(i) certification). *But see In re Losee*, 195 B.R. 785, 786 (Bankr. M.D.Fla.1996) (concluding that the unauthorized practice of law "is not one of the conducts proscribed" by § 110 without examining whether conduct that amounts to unauthorized practice of law is fraudulent, unfair, or deceptive within the embrasure of § 110) (J. Paskay); *In re Chamberland*, 190 B.R. 972, 978 (Bankr.M.D.Fla.1996) (certifying record to the state bar association for possible unauthorized practice of law, at the same time concluding that the record did not support a certification to district court for § 110(i)(1) fraud) (J. Paskay).[13]

11. At least one court has held that the use of questionnaires, as is Jencks's practice, is, in and of itself, the unauthorized practice of law. *See Hastings v. United States Trustee (In re Agyekum)*, 225 B.R. 695, 702 (9th Cir. BAP 1998) ("Soliciting information from a debtor which is then typed into schedules constitutes the unauthorized practice of a law.")

12. The pertinent Maine statute provides:

**Prohibition.** *No person may practice law* or profess to practice law *within the State* or before its courts, *or demand or receive any remuneration for those services rendered in this State,* unless that person has been admitted to the bar of this State and has complied with section 806–A, or unless that person has been admitted to try cases in the courts of this State under section 802.

Me.Rev.Stat.Ann. tit. 4, § 807(1) (West Supp. 1998) (emphasis added). The statute carves out exceptions for certain activities, none of which is applicable here. *See id.* § 807(3). Violation of the prohibition on unauthorized law practice is a Class E crime. *See id.* § 807(2). (In Maine "Class E" crimes are those for which the maximum period of imprisonment is not more than one year. *See* Me.Rev.Stat.Ann. tit. 17–A, §§ 4–A(2–A), (3)(E) (West 1983).)

13. In so doing, I draw from state and federal unfair trade practices statutes and consumer protection statutes to determine that the terms "unfair" and "deceptive" in § 110(i) comprehend misleading conduct of the character engaged in by Jencks in this case. *See In re Hobbs*, 213 B.R. at 217 n. 23 (observing propriety of relying on case law interpreting the Federal Trade Commission Act when applying § 110(i)); 2 Lawrence P. King, ed., *Collier on Bankruptcy* ¶ 110.10[1] (15th ed. Rev.1996 & Supp.) (same); *see, e.g.,* 15 U.S.C. § 45(a)(1) (1997) ("Unfair methods of competition in or affecting commerce, and unfair or deceptive act or practices in or affecting commerce, are hereby declared unlawful."); Me. Rev.Stat.Ann. tit. 5, § 207 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."); *see also e.g., Tagliente v. Himmer*, 949 F.2d 1, 7 (1st Cir. 1991) (an act is "deceptive" pursuant to Massachusetts' unfair trade statute if it caused the

Jencks does not agree. He points to his practice of stressing to his customers that he is not an attorney and that he cannot and will not provide them with legal representation. That Jencks so advises his customers and that he so advised Moore is not disputed. But it is beside the point. If a license is needed to practice medicine, one who administers prescription drugs or provides medical treatment cannot defend the charge of practicing medicine without a license by showing that he repeatedly advised his patient that he was not a doctor. *See, e.g., Lewis v. Kentucky State Bd. of Dental Examiners*, 300 S.W.2d 241, 244 (Ky.1957) (upholding injunction against unlicensed dentist, observing that it "is immaterial . . . that the practitioner does not assume to be a physician or dentist").

Maine requires bar admission to "practice law . . . within the State or before its courts," just as plainly as it requires such admission before one may "profess to practice law." Me.Rev.Stat.Ann. tit. 4, § 807(1). That Jencks denies having held himself out as a lawyer is of no moment. *See e.g., Birbrower, Montalbano, Condon & Frank v. ESQ Bus. Servs.*, 17 Cal.4th 119, 70 Cal.Rptr.2d 304, 949 P.2d 1, 11 (Ca.1998) (full disclosure of lack of local license to practice law does not except the out-of-state attorney from the rule prohibiting the recovery of legal fees incurred in the unauthorized practice of law). His practices are all the more misleading if, while dispensing advice that had profound consequences for Ms. Moore. he assured her that none of it was "legal advice." [14]

person to behave in a manner he or should would not have otherwise); *Binette v. Dyer Library Ass'n*, 688 A.2d 898, 906 (Me.1996) ("[A]n act may be deceptive pursuant to [the Maine unfair trade practices act] even though the defendant had no purpose to deceive and acted in good faith."); *see generally Suminski v. Maine Appliance Warehouse, Inc.*, 602 A.2d 1173, 1174 n. 1 (Me.1992) ("[U]nfair or deceptive act 'must be substantial; it must be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that the consumers themselves could not reasonably have avoided,'" citations and quotations omitted); *accord Bangor Publ'g Co. v. Union St. Mkt.*, 706 A.2d 595, 597 (Me.1998).

14. Here are some examples: Jencks advised Moore that, because suit had not been filed, Moore was not required to disclose her personal injury claim as an asset. He could not have been more wrong. The bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a). A cause of action is plainly estate property. *See State Farm Life Ins. Co. v. Swift (In re Swift)*, 129 F.3d 792, 795 (5th Cir.1997) ("Upon the filing of bankruptcy, Sec. 541 of the Bankruptcy Code creates an estate that consists of 'all legal or equitable interests of the debtor in property as of the commencement of the case'. This definition is very broad, and includes causes of action belonging to the debtor at the commencement of the case," footnotes and citations omitted); *accord Regan v. Vinick & Young (In re Rare Coin Galleries of America, Inc.)*, 862 F.2d 896, 900 (1st Cir. 1988); *Miller v. Shallowford Community*

*Hosp., Inc.*, 767 F.2d 1556, 1559 (11th Cir. 1985). What's more, a failure to disclose such an asset, if later determined to have been fraudulent, may trigger a denial of discharge, *see* §§ 727(a)(2)(A), (a)(4)(A); *Miller*, 767 F.2d at 1560 (if debtor "was aware of cause of his cause of action at the time the bankruptcy proceeding commenced, the asset not only would be considered property of the estate, but he could be subjected to penalties under the Bankruptcy Code for concealing assets and defrauding creditors), or even criminal sanctions. *See* 18 U.S.C. § 152; *see cf. United States v. Shadduck*, 112 F.3d 523 (1st Cir.1997) (signing schedules that perjuriously deny interest in insurance policy, pension plan, and bank account); *United States v. Grant*, 971 F.2d 799 (1st Cir.1992) (concealing selected art work); *see also United States v. Rowe*, 144 F.3d 15, (1st Cir.1998) (failure to list interest in real estate sufficient to support 18 U.S.C. § 152 conviction).

Jencks told Moore she could dispose of assets however she chose, so long as she did so before she filed her petition and so long as the disposition was disclosed. That advice was simpleminded and, simply, incorrect. Moore's transfer of her $14,000.00 car to her daughter for $500.00 on the eve of her bankruptcy filing in order to preserve extra-exempt value for herself would have, at minimum, jeopardized her Chapter 7 discharge. *See* § 727(a)(2)(A); *Martin v. Bajgar (In re Bajgar)*, 104 F.3d 495 (1st Cir.1997) (debtor who fraudulently transferred property within one year of bankruptcy was denied a transfer pursuant to § 727(a)(2)(A) even though he revealed the transfer and re-transferred the property after filing bankruptcy).

Jencks's advertising, which will be discussed below in connection with § 110(f), is also a factor here. Each version of his newspaper advertisement is headed "Paralegal Services of Maine" and includes "Bankruptcy" among the services offered.[15] None of the ads explain that the assistance Jencks provides in connection with bankruptcy is limited to document preparation. Thus, the advertisements, Jencks's fee structure, and his course of conduct combine to create a misleading impression that he brings to his clients some measure of lawfully salable bankruptcy expertise.[16]

Although Jencks's fees will be addressed separately below in connection with § 110(h), they bear mention here because they added to Moore's confusion about what she could and could not expect Jencks to provide her. Moore's schedules indicate only two unsecured claims against her.[17] Her budget is as simple as they come, with modest income from social security disability, food stamps, and undefined state benefits. Her household expenses are uncomplicated and unremarkable. In other words, even if Jencks's services extended beyond completing forms to include assisting Moore in organizing her records, this could not have been a case that required extensive effort. How Jencks could charge Moore $300.00 for his work, and how she could agree to pay that sum, would be inexplicable but for the combination of Moore's distress and her expectation that purchasing "paralegal services" brought some measure of expertise to bear on her legal/financial problems. Offering "bankruptcy" under "paralegal services" for a substantial flat fee (amounting to somewhere between 40% and 60% of what lawyers charge for legal representation in such cases) contributed to creating that expectation.

I readily conclude that Jencks's practices vis-a-vis Moore were "unfair and deceptive" within the meaning of § 110(i). He wrongfully dispensed legal advice, in itself enough to warrant § 110(i) relief, *see In re Hobbs*, 213 B.R. at 218 & n. 25, and he falsely disclaimed providing legal advice when, in reality, that is exactly what he was doing. In addition, Jencks's advertising and fee structure create the misleading impression that he will provide debtors such as Moore guidance and expert assis-

Jencks told Moore that a Chapter 7 discharge would relieve her of liability on the Lelia Brooks claim. Aside from the fact that the Brooks claim was not then Moore's personal liability, suffice it to say that if she ever became personally liable to Brooks, either on account of her being executor of Brooks' brother's estate or on account of the circumstances under which Moore became the estate's principal beneficiary, the answer would be far from clear-cut. *See* §§ 523(a)(2)(A), (a)(4), (a)(6).

Jencks told Moore that she would easily be able to keep her residence through reaffirmation. He did not explain, however, that reaffirmation requires mutual assent or that the bank might bill her for costs or fees associated with her reaffirmation.

15. Jencks's newspaper advertisements, in evidence before me, have changed slightly over time. They are reproduced in Appendix A to this opinion. The latest version separates the heading "Bankruptcy" from other listed services (which include "Divorce," "Will,"

"Power of Attorney," "Unemployment," "SSDI," "SSI," and "Workers' Compensation").

16. Moore testified that she did not seek Jencks out based on his advertising. She heard by "word of mouth" that he could assist her in obtaining bankruptcy relief cheaper than she could with an attorney. In response to Moore's testimony about the advice she received from him, Jencks testified about his routine practices with customers to demonstrate that in Moore's case he acted consistently with those practices (and gave no legal advice). I note his advertising here as another component of his routine practice—a component designed to attract business based on the public impression it creates about what services he offers.

17. The two claims are scheduled as five. Brooks is listed as one creditor, Brooks's attorney is listed as a second (for the identical claim). Publishers' Clearing House is listed three times (for $13.90, $12.30, and $15.60).

tance, not just document preparation services.

Jencks's remaining defenses are unconvincing. Over and above relying on his disclaimers, he points out that, unlike the petition preparer in *In re Hobbs*, he accurately presented himself as a "paralegal" by virtue of his education and experience. And he points to a law dictionary's definition of "paralegal," which defines the term as:

> **Paralegal.** A person with legal skills, but who is not an attorney, and who works under the supervision of a lawyer in performing various tasks relating to the practice of law or who is otherwise authorized by law to use those legal skills. Paralegal courses leading to degrees in such specialty are now afforded by many schools.

*Black's Law Dictionary* 1111 (6th ed.1990).[18]

Without doubt, Jencks has an Associates Degree in "paralegal studies" and had extensive experience working under the supervision of attorneys before striking out on his own as an "independent paralegal." But, even if he may accurately represent himself as an "independent paralegal," there exists no legal authorization for him to dispense legal advice without being admitted to the bar. Indeed, as noted above, state law prohibits it. The attention § 110 gives bankruptcy petition preparers, while arguably recognizing their legitimacy to perform limited tasks, does nothing to expand the scope of their permissible activities. The statute expressly provides: "Nothing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law." § 110(k).

Thus, I will certify this matter to the U.S. District Court so that Moore may obtain an award of fees, costs, and damages. *See* § 110(i)(1). In the end, the District Court will determine what those damages will be. However, consistent with the approach taken in *In re Hobbs*, *see* 213 B.R. at 218 n. 28, I will review Moore's damages demand and make recommendations to the District court at the close of this opinion.

### 2. § 110(h)

■ Section 110(h) requires petition preparers to file a sworn declaration of the fees received from the debtor within twelve months of bankruptcy and of "any unpaid fee charged to the debtor." § 110(h). It authorizes the court to review those fees and provides that the court "shall disallow" fees "found to be in excess of the value of services rendered for the documents prepared." § 110(h)(2). Excess fees are to be turned over to the bankruptcy trustee, but the debtor may claim them exempt (if an appropriate exemption applies). *See id.*

The record leaves me at a complete loss as to how Jencks's services could have been worth $300.00. All he was lawfully permitted to do was to help Moore organize her simple affairs and fill out her bankruptcy forms. Jencks provided the court with no time records to explain how he arrived at his fee. His testimony and his advertisements demonstrate that he charged Moore $300.00 because it is his "standard charge." [19]

---

**18.** At trial, Jencks read from and included as an exhibit a photocopy of an earlier edition of *Black's Law Dictionary.* The versions are identical except that the definition recited by Jencks does not include the phrase "in performing various task relating to the practice of law."

Though such a definition may assist a court in identifying the common meaning of a term as intended by lawmakers, this dictionary treatment in no way enhances the scope of what paralegals are legally permitted to do.

**19.** As justification for his $300.00 flat fee, Jencks submitted a copy of a July 1996 letter from a Chapter 7 panel trustee to another independent paralegal, asking him to return $150.00 of a $450.00 flat fee to the debtors he had assisted. It is a mystery to me how the letter relates to the work performed and fees charged to Moore, other than as evidence that

If Moore's decision to file for bankruptcy relief had been all her own, she would be obliged to pay fair value for the services of a document preparer who assisted her in making her own mistakes. But here I am convinced that Moore's decision to file was based in part on her consultations with Jencks, which led her to believe that she could file for relief, retain her valuable automobile, reaffirm the debt secured by her home, and effectively eliminate her (perceived) liability to Brooks.

I cannot conclude that Jencks provided services of any value to Brooks. *See, e.g., United States Trustee v. Womack (In re Paskel)*, 201 B.R. 511, 518 (Bankr.E.D.Ark. 1996) (full turnover of fee paid because preparer's services harmed rather than benefitted the debtor—confusing her with respect to her obligations under the Code and requiring debtor to hire an attorney); *In re Brokenbrough*, 197 B.R. 839, 844 (Bankr.S.D.Ohio 1996) (ordering turnover of full fee paid due to the "negligible" value of services, citing, among other things, the necessity that the debtor hire legal counsel to correct the errors of her petition as prepared); *In re Stacy*, 193 B.R. at 36 (full fee ordered turned over as debtor was not benefitted by defendant's services, debtor's case having been dismissed for failure to file required documents); *see also In re Kaitangian*, 218 B.R. at 115 (having found that the preparer had engaged in the unauthorized practice of law, ordering that "all fees received shall be disgorged as fruits of illegal and improper actions, irrespective of the quantum meruit value of such services"); *In re Hartman*, 208 B.R. at 780 (concluding that "petition preparers are entitled to an hourly rate of $20.00," further ordering the disgorgement of $625 of a $675 fee because the schedules were incomplete and inaccurate and their filing was delayed). Because Moore's case has been dismissed, turnover to the trustee, and possible exemption of the funds, as the statute contemplates, is not practical. I will, there-

fore, consider the $300.00 fee that Moore paid Jencks in my damages recommendation to the district court.

### 3. § 110(f)

■ Section 110(f) provides:

(1) A bankruptcy petition preparer shall not use the word "legal" or any similar term in any advertisements, or advertise under any category that includes the word "legal" or any similar term.

(2) A bankruptcy petition preparer shall be fined not more than $500 for each violation of paragraph (1).

§ 110(f)(1)–(2).

I have already discussed how Jencks's advertisements, headed "Paralegal Services of Maine," contribute to confusion about what he may permissibly do for *pro se* debtors and mislead consumers into thinking they are purchasing far more than document preparation services. In an earlier decision I observed:

Section 110 is a consumer protection measure. Although there is no legislative history specific to subsection (f), it is clear that in enacting § 110 Congress was concerned with debtors who may be "ignorant of their rights both inside and outside the bankruptcy system." 140 Cong.Rec. H10752, H10770 (1994) (section-by-section description inserted into the record of house debates on the Bankruptcy Reform Act of 1994). Thus, § 110(f) is appropriately viewed as a measure meant to ensure that debtors understand exactly what they will and will not receive from bankruptcy petition preparers. Petition preparer advertising must keep well clear of any suggestion that the preparer will be offering legal services or insights.

The prefix "para" is defined as "beside," "closely resembling the true form," and "associated in a subsidiary or accessory capacity." Webster's Third New International Dictionary 1634 (1976). The definition of "Paralegal" in-

$300.00 is what Jencks thought he could get away with.

cludes "of, relating to, or being a paraprofessional who assists a lawyer." *Id.* at 76a. *See also* Black's Law Dictionary 1111 (6th ed. 1990) ("A person with legal skills, but who is not an attorney, and who works under the supervision of a lawyer in performing various tasks relating to the practice of law or who is otherwise authorized by law to use those legal skills.") [In this instance, the petition preparer] works independently, unaffiliated with and unsupervised by any member of the bar. Advertising himself and his business as providing "paralegal services" implies such an association or, at least, promotes [his] "legal skills" when, in reality, he can lawfully provide none. *See* Me.Rev.Stat.Ann. tit. 4, § 807(1). Thus, because the term "paralegal" fosters consumer confusion of the character Congress intended to eliminate, it is properly considered a "similar term" to "legal" under § 110(f)(1).

*In re Hobbs,* 213 B.R. at 215 (footnote and one parenthetical omitted).

Although Moore cited Jencks's advertising as unlawful in her brief, she did not ask that he be fined for violating § 110(f). I have taken the advertising into account in my § 110(i) analysis and will address it in connection with the injunction that will issue. The evidence adduced at trial plainly discloses multiple, and ongoing, violations of § 110(f)(1) warranting imposition of a fine under 110(f)(2). As a consequence, invoking my powers under § 105(a), but providing Jencks an opportunity to address the precise issue, I will enter an order requiring Jencks to show cause, by written submission filed within 10 days, why he should not be fined

$500.00 under § 110(f)(2) for violating § 110(f)(1)'s advertising prohibition.[20]

### 4. § 110(j)

■ Finally, Moore asks that I issue an injunction prohibiting Jencks from continuing to act as a bankruptcy petition preparer. Although § 110(j)(2)(B) offers a remedy of such broad scope, it does so only in cases in which the court finds that the petition preparer has "continually" violated § 110 or the Bankruptcy Code, misrepresented his or her experience or education, or engaged in fraudulent, unfair, or deceptive practices that could not be prevented by a tailored injunction.

Although Jencks's conduct certainly violated the statute, I cannot conclude on this record that he would be incorrigible in the face of a more narrowly fashioned injunction. Accordingly, pursuant to § 110(j)(2)(A), I will grant plaintiff's request by issuing an injunction that:

a. Prohibits Jencks from advertising bankruptcy petition preparation services in conjunction with offering "paralegal services" or in any advertisement containing the words "legal" or "paralegal";

b. Prohibits Jencks from advertising bankruptcy services without explicitly indicating that the extent of his services is limited to document preparation and associated organizational assistance;

c. Prohibits Jencks from providing legal advice or counsel of any description; and

d. Prohibits Jencks from charging for document preparation services on a "flat fee" basis in any amount exceeding $75.00.[21]

---

20. In *In re Hobbs,* I did not resolve the question whether a petition preparer could be fined $500.00 for each edition of a newspaper publishing an advertisement with language violative of § 110(f). *See* 213 B.R. at 215 n. 20. In the case before me I conclude that a $500.00 fine, coupled with an injunction, discussed *infra,* will suffice to capture Jencks's attention and assure future compliance with the statute.

21. This is not to say that Jencks might charge more in any given case. He simply may not advertise his document preparation services, and associated charges, in a manner and amount that creates a misleading impression about the scope and character of what he offers. I have set the amount at "not to exceed $75.00," based on my understanding of what Jencks may permissibly do for debtors, rates charged for paralegal services in

In light of my findings, the foregoing injunctive prohibitions are warranted to reduce (perhaps eliminate) consumer confusion over what services Jencks offers to prospective bankruptcy debtors; to curtail his unauthorized practice of law; and to assure that his fee structure does not create the illusion that debtors are paying for bankruptcy expertise.

### 3. Relief and Damages

#### a. Recommended Damages Pursuant to § 110(i) Certification

■ Based on the foregoing findings and conclusions, I will certify Jencks's § 110(i) violations to the district court and will recommend that the following damages be awarded:

*Actual Damages — § 110(j)(1)(A).* Because Moore went ahead with her bankruptcy filing in large part relying on Jencks's assurances regarding how bankruptcy would affect her assets and liabilities, she is entitled to actual damages including:

a. Bankruptcy filing fees. ($175.00.)

b. Attorneys' fees incurred in connection with the bankruptcy case, including obtaining its dismissal. (To be determined.) [22]

c. Charges assessed by her lender in connection with reaffirmation of her mortgage obligations. ($488.66.)

For several reasons, I decline to recommend that Moore be awarded the value of the Toyota she transferred to her daughter, less the $500.00 the daughter paid. First, although Jencks's advice provided some encouragement for the transaction, I am not convinced that he recommended that Moore attempt the transfer. Second, Moore herself bears substantial responsibility for employing such a transparent

scam to deprive her prospective bankruptcy estate of a valuable asset. Third, given the inside character of the sale, I am unconvinced by Moore's testimony that, when all is said and done, her daughter will not transfer the car back in return for about the same sum as she paid.

*Fee-based Damages — § 110(i)(1)(B).* Moore is entitled to the greater of $2,000.00 or twice the amount she paid Jencks (2 × $300.00). Thus, I recommend a $2,000.00 award.

#### b. Injunctive Relief — § 110(j)(2)(A)

As discussed above, I will enjoin Jencks from misleading advertising practices and fee arrangements and will prohibit him from providing bankruptcy counseling. A detailed injunctive order will issue contemporaneously with this opinion.

#### c. Attorneys' Fees — § 110(j)(3)

■ Having successfully prosecuted an action seeking injunctive relief under § 110(j), Moore is entitled to an award of the reasonable attorneys' fees and costs related to the action. I, rather than the district court, make that award. Debtor's counsel, therefore, shall submit an application for an award of fees and costs, together with an affidavit detailing those fees and costs, within 10 days of the date of the order accompanying this opinion. Jencks may object to the amounts sought within 10 days thereafter. I will then determine the amount to be awarded and enter an order requiring Jencks to pay it.

#### d. Order to Show Cause Regarding § 110(f) Fine

I will issue an order requiring Jencks to show cause by written submission filed within 10 days of the order accompanying

this locale, and my personal experience in reviewing and setting fees in bankruptcy cases.

22. Because, unlike the § 110(j)(3) fees award discussed below, these fees are a component of damages which may be assessed by the

district court, I will not require that Moore's attorney submit an affidavit detailing those fees to me. He should, however, be prepared to provide the district court with proof, as it requires, on the point.

this opinion why he should not be fined $500.00, to be paid to the clerk of this court, for violating 110(f)'s advertising prohibitions.

### Conclusion

With the issues decided and appropriate relief to issue, I am compelled to offer a few observations about the difficult issues this case presents.

I question how carefully a debtor might consider her options when, as here, she seeks out inexpensive paralegal assistance and is told of her options only after she learns that the inexpensive route leads exclusively to Chapter 7. I am troubled that Jencks, with all good intentions, crossed the line of permissible paralegal activity. I am distressed, but certain, that he was unequipped to see that line as he approached it. And I am confounded that he could discuss Moore's $14,000.00 car with her one day, fill out forms disclosing nothing about the car, its transfer or its proceeds shortly thereafter, and then defend his actions by saying that he depended only on Moore's written questionnaire (rather than what he knew to be the case) in executing his duties (for which he charged a $300.00 fee).

Let no one conclude that Samuel Jencks is an unscrupulous operator. I believe him to be one of a number of "honest people performing what they perceive to be a worthwhile service for needy debtors." *Consolidated Memorandum Regarding Bankruptcy Petition Preparers,* 1997 WL 615657, at *2. But bankruptcy, like other legal processes, alters rights and obligations among society's actors. Historically, standard, paper forms have played a significant (required) part in the process. But completed forms are not "bankruptcy" any more than a map is a journey. Which forms are employed, as well as their content, will determine how and when rights are altered. And the content of the forms is, properly, a function of the legal definitions of the categories of information they seek. I fear these points are lost on many debtors and, in truth, on many petition preparers.

Bankruptcy is a rights-transforming *process.* Filing completed forms is but the *beginning.* The bankruptcy process includes the potential for imposition of goal-defeating sanctions. When a debtor's representations do not equate with legal reality, how the process ends may well depend on the insight and care exercised at the threshold. Each citizen has the right to represent himself or herself. *Pro se* debtors may succeed or fail by their own lights. Debtors who seek expertise or guidance, if they are to have a fair chance at succeeding, must be guided by informed counselors for whom effective standards of practice and ethics are in place. A petition preparer may be the do-it-yourself debtor's scrivener—nothing more.

Finally, much of Jencks's defense was political argument. This is not a political case; this is not a political outcome. Unlike prosecutors who exercise discretion in deciding what cases to prosecute, judges are duty bound to decide the cases brought before them on the evidence presented and the law as it exists—not as they (or the parties before them) think it should be. I can and will do only that. Today's result follows.

For the reasons set forth above, separate orders will issue as follows:

1. Certifying § 110(i) violations and recommending damages to the district court;

2. Enjoining Jencks from practices violative of § 110 of the Bankruptcy Code;

3. Awarding Moore her attorneys' fees and costs associated with her successful action seeking injunctive relief; and

4. Requiring Jencks so show cause by written submission why he should not be fined $500.00, to be paid into the court registry, for past violations of § 110(f)(1).

## ORDER

Pursuant to this court's memorandum of decision dated this date, it is ordered and adjudged that:

1. I hereby certify violations of 11 U.S.C. § 110(i) to the United States District Court for the District of Maine for an award of damages, fees and costs on plaintiff's motion.

2. I hereby enjoin Samuel Jencks from the following acts and practices:

a. Offering bankruptcy petition preparation services in advertisements for "paralegal" services;

b. Offering bankruptcy petition preparation services in advertisements that do not expressly state that services provided in connection with bankruptcy are limited to document preparation and associated organizational assistance;

c. Offering bankruptcy petition preparation services for a "flat fee" in any amount exceeding $75.00; and

d. Offering or providing legal advice or counseling in connection with bankruptcy document preparation services.

3. Award the plaintiff her reasonable attorney's fees and costs incurred in successfully prosecuting her action for injunctive relief, require her attorney to file an application and supporting affidavit (and to serve defendant) within 10 days of the date of this order, and require the defendant to respond to that application, if at all, by written submission filed within 10 days after the application is filed.

4. Order the defendant to SHOW CAUSE, by written submission to be filed within 10 days of the date of this order, why he should not be fined $ 500.00 for past violations of 11 U.S.C. § 110(f)(1).

Appendix  A *

**Paralegal Services of Maine**

DIVORCE • WILL • POWER OF ATTORNEY
• UNEMPLOYMENT • SSDI • SSI •
WORKERS' COMPENSATION, ETC.
CALL 1-207-474-5016

**BANKRUPTCY**
**$200** *with this ad*
†IN-HOME SERVICE AVAILABLE.
• $100 OFF REG. PRICE OF $300††

1998–99  Ad

**Paralegal Services of Maine**

DIVORCE • WILL • POWER OF ATTORNEY
• UNEMPLOYMENT • SSDI • SSI •
WORKERS' COMPENSATION, ETC.
CALL 1-207-474-5016 MONDAY - FRIDAY 9-5 PM

**BANKRUPTCY**
**$300**

1998  Ad

**Paralegal Services of Maine**

BANKRUPTCY • DIVORCE • POWER OF
ATTORNEY • UNEMPLOYMENT • SSDI •
SSI • WORKERS COMPENSATION, ETC.
Call 1-207-474-5016 Monday - Friday 9-5 PM

**SIMPLE WILL**
**$45**

1996  Ad

* Source: Defendant's Exhibit M