**In re Sylvia L. GUTTIEREZ, Debtor.**

**No. 99–53034–C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

April 17, 2000.

Sylvia Linda Gutierrez, San Antonio, TX, pro se.

Marion Olson, Jr., San Antonio, TX, trustee.

## MEMORANDUM OPINION

LEIF M. CLARK, Bankruptcy Judge.

This memorandum opinion details the facts and circumstances of a petition preparer in San Antonio, Texas. The opinion also explains why, as a matter of law, petition preparers can never offer more than mere scrivening/typing services, and why 11 U.S.C. § 110 is expressly *not* a

congressional authorization for a new kind of "profession." Thus, petition preparers can not charge for any "special services" beyond mere typing service. Petition preparers who purport to offer *any* service beyond typing forms perforce engage in the unauthorized practice of law. When they do so, they also, of necessity, violate one or more provisions of section 110—especially if they do so for a fee that exceeds a reasonable fee for typing services.

Evidence was taken at a hearing on this court's Show Cause Order regarding the conduct of Ms. Rosario Divins, who offered assistance in the preparation and filing of a bankruptcy petition on behalf of the debtor in this case—and did so for a rather substantial fee. The Show Cause hearing was commenced on November 11, 1999, and was continued to November 29, 1999, in order to afford Ms. Divins an opportunity to seek counsel. This opinion sets out this court's findings of fact and conclusions of law, in support of the ruling issued at the conclusion of that hearing. The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(A) and (b)(2)(O).

## I. BACKGROUND

This matter traces its beginnings to a hearing on the Chapter 13 Trustee's motion to dismiss the debtor's chapter 13 bankruptcy case. During the course of the hearing, the court heard testimony from the debtor, Sylvia Guttierez, regarding the role played by one Rosario Divins ("Divins") in "helping" the debtor file her bankruptcy case. At the dismissal hearing the court learned that Divins appeared to have:

(1) held herself out to the public in general and to this debtor in particular as a person who could assist persons to "stop foreclosure", in express violation of an order of this court (Judge Ronald B. King presiding)[1] prohibiting Divins from offering bankruptcy services and/or engaging in the unauthorized practice of law;

(2) charged the debtor in this case a fee in excess of $1,700.00 for preparation of a bankruptcy petition;

(3) failed to disclose her assistance and failed to disclose the fee she received;

(4) suborned perjury by advising the debtor to complete the Pro Se Filing Questionnaire[2] without disclosing Divins' assistance;

(5) suborned perjury by advising the debtor to file her bankruptcy forms without disclosing the amount of the fees paid to Divins;

(6) committed theft of services by transferring her own utility bill to the name of the debtor with the intention that the charges for those services (in excess of $3,000.00) then be discharged in the debtor's bankruptcy;

---

1. On October 26, 1994, in Case No. 94–51228 (*In re* Oralia Lara), Judge King entered an order finding Ms. Divins in violation of the provisions of § 110. *See* Trustee's Exhibit 5. Judge King's Order provided that:

    1. Rosie C. Divins was not to engage in the unauthorized practice of law in this case or in any case or potential case in the Western District of Texas.

    2. Rosie C. Divins was not to counsel with clients or prospective bankruptcy debtors concerning whether to file bankruptcy; whether a spouse should join in a bankruptcy case; under which Bankruptcy Code Chapter to file; and Rosie C. Divins was not to prepare or furnish legal forms or give advice how to fill out legal forms or answer questions in the forms in connection with the filing of a bankruptcy case.

    3. [Addressed the fines and penalties assessed against Rosario Divins].

    4. Rosie C. Divins was not to charge or collect referral fees from attorneys or share fees with attorneys.

2. This form must be completed by all debtors filing pro se. This questionnaire requires the debtor to disclose, under penalty of perjury, any person who has assisted the debtor and any fees paid for such assistance.

(7) violated provisions of 18 U.S.C. § 152 by knowingly and fraudulently attempting to use the debtor's bankruptcy discharge to discharge the charges for her own utility services.[3]

The court issued a Show Cause Order detailing the foregoing concerns, and offering Divins the opportunity to appear and show cause why further orders should not be entered finding her in contempt of Judge King's order, enjoining her from further activity as bankruptcy petition preparer or bankruptcy advisor, and assessing damages.[4] After taking evidence at the Show Cause hearings, the court issued findings and conclusions from the bench,

3. As a matter of law, the bankruptcy court cannot adjudicate matters arising under 18 U.S.C. § 152. However, the court may, if it finds probable cause to believe such violations may have occurred, refer the matter for investigation and prosecution to the U.S. Attorney. 18 U.S.C. § 3057.

4. The November 11 hearing was continued by the court so that Divins could retain counsel. The court's concern was that Divins constitutional rights might be violated without the assistance of counsel. At the Nov. 29 hearing Divins' counsel argued that the court's Show Cause Order exceeded the authority of the court because it purported to hold Divins in criminal contempt. The court explained that the Show Cause hearing was only to determine if Divins would be held in civil contempt for violating Judge King's Order and for violations of the provisions of § 110. *See Placid Refining Company v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 612–13 (5th Cir.1997). However, we acknowledged that some of Divins' actions that might constitute a violation of Judge King's order and/or a violation of § 110 might also support a referral to the U.S. Attorney for criminal prosecution under 18 U.S.C. § 152.

5. The court says "seems" because the testimony of the debtor and Divins was so diametrically opposite. The court made its credibility determinations and is comfortable with its factual conclusions. However, the court makes no pretensions that it found "the truth"—one can never know for sure whether one's factual findings, based on the evidence, in fact correspond to "what really happened." The observation applies, of course, to all factual findings by all courts (whether by judge or jury) in all cases.

reserving the right to supplement its finding by memorandum opinion, in view of the importance of the matter to the bench and bar.

## II. Findings of Fact

Here is what seems to have taken place, based on the evidence presented at the hearing.[5] The debtor knew Divins because of Divins' friendship with the debtor's mother. The debtor learned of Divins business operations because Divins provided her with several of her business cards[6] which state that, among other things, Divins could help people "stop foreclosures".[7]

6. *See* Trustee's Exhibit 1. The business cards are printed on both sides. Both sides include Divins name and telephone number. What we will call side A is entitled R.D. Investments. Side A includes the words: Home loans–10 yrs to repay; Refinance Mort; Stop Foreclosures; Pay IRS Liens; Property Taxes; Home Improvements; Equity Loans; Secure Deed; Consolidate Liens; No Credit Check. Side B of the business card is entitled R.D. General Contracting. Side B includes the words: *100% financing available; Home Improvements;* Additions; A/C Heating; New Construction; Plumbing; Electrical; Driveways; Patios; Concrete Work & Bricklaying.

7. According to Divins the purpose of her business is only to help people refinance loans. She testified the actual number of people she has helped refinance loans was less than 5 since 1996. She insisted that she never told anyone they could stop foreclosure by filing bankruptcy. However, when asked whether she knew of another way to stop a foreclosure other than by filing bankruptcy, Divins could furnish no other answer.

Like much of the rest of her testimony, Divins' statements concerning her use of the business card was not credible. She stated that she no longer used the business card and that she hasn't helped "stop foreclosures" since Judge King's 1994 Order. However, when pressed, Divins admitted that she started using it "six or seven years ago" and did not stop handing it out to people until 1995 or 1996 notwithstanding Judge King's 1994 Order. Throughout the trial Divins' answers were contradictory, indirect, deceptive, inconsistent and quite frankly unbelievable. Divins attributed her inconsistent answers to her contention that she was having trouble hearing, but even this testimony—accompanied by

Divins' furnishing these business cards to *anyone* (including the debtor) contravened Judge King's order specifically enjoining Divins from holding herself out as a person who could assist people in filing bankruptcy.

At some point thereafter, the debtor found herself unable to stay current with her mortgage payments on her home, and was facing an imminent foreclosure. Desperately searching for a way to stop the foreclosure, the debtor remembered Divins, whose business card stated that she could "stop foreclosure". Believing herself to have no other alternative, the debtor called Divins and asked for her assistance.[8] Divins assured the debtor that she could indeed stop the foreclosure, by filing a chapter 13 bankruptcy.[9] Divins told the debtor that her fee for stopping the foreclosure would be approximately $2,000.00. Divins arranged a time for her and the debtor to meet and reminded the debtor to bring to the meeting all the papers on her house including the letter from the mortgage company regarding foreclosure.

At the actual meeting between Divins and the debtor several important things happened. For one thing, the debtor paid Divins $1,767.00 of the $2,000.00 fee. For another, Divins again told the debtor that she would need to file a Chapter 13 bankruptcy to stop the foreclosure. Also, Divins reassured the debtor that she would not need to be inconvenienced by the bankruptcy paperwork, because Divins had already prepared a "template" Chapter 13

petition in advance of this meeting with the debtor. The debtor followed Divins' directions, copying entries previously made by Divins on the "template" petition onto the actual petition. Divins then checked the various boxes on the actual petition indicating the type of debtor, the chapter under which the case was being filed, the number of creditors, the intention to file a plan, and the debtor's estimated assets and liabilities. Finally, Divins prepared a "financial statement" in her own handwriting, totaling the debtor's monthly income and expenditures.[10] On July 6, 1999, the debtor went to the bankruptcy clerk's office (Ms. Divins stayed outside in her car) and filed her "pro se" voluntary petition. The clerk has all *pro se* debtors complete, at intake, a questionnaire (signed under penalty of perjury) requiring the debtor to disclose whether he or she had assistance, and if so, to disclose the name and address of that person and any fee paid or promised to be paid. On instructions from Divins, the debtor stated on her Pro Se Questionnaire that no one assisted her in preparing the petition and that she had paid no one a fee for assistance.[11] What is more, although Divins had obviously assisted the debtor in preparing the bankruptcy documents, Divins did not sign the petition in the block designated for petition preparers, nor was her name or address anywhere indicated on the petition, or any of the other forms.

Divins offered little further assistance to the debtor, other than to caution her not to tell anyone (especially the chapter 13

---

some appallingly bad acting—was not credible.

8. Generally, most debtors who utilize bankruptcy petition preparers also happen to be poor and relatively unsophisticated people who think they cannot afford to hire an attorney. The debtor in this case fits both of these rubrics. The debtor only completed school through the eighth grade (although she is presently pursuing her GED). Also, the debtor testified that she never asked Divins if she needed an attorney and Divins never told her she might need to get an attorney.

9. The debtor testified that she did not know or understand anything about bankruptcy. According to the debtor, the only reason the debtor knew it was a Chapter 13 and that it would stop foreclosure was because Divins told her so.

10. *See* Trustee's Exhibit 7. With this information, Divins could complete Schedules I and J, from which the chapter 13 plan payment would then be derived.

11. Of course, the debtor now recants these statements which were made under penalty of perjury. *See* Trustee's Exhibit 3 and 4.

trustee) about her involvement in the case. Ironically, Ms. Divins was a debtor in her *own* chapter 13 bankruptcy case (pending, even more ironically, before Judge King). The evidence indicates that Ms. Divins attempted to transfer her own utility bill to the debtor's name, in what appeared to have been an attempt to have her own utility bill discharged in the debtor's bankruptcy.[12]

### III. ANALYSIS

### A. Purpose of Bankruptcy Code § 110

Congress added section 110 to the Bankruptcy Code in 1994, as a congressional response to perceived abuse of the bankruptcy laws by so called "typing services" which had proliferated especially in the Central District of California. *See* Pub.L. No. 103–394, Title III, § 308, 108 Stat. 4106, 4135–37 (1994) (applying to bankruptcy cases commenced after Oct. 22, 1994); *see also* 140 Cong. Rec. H10772 (Oct. 4, 1994) (statement of Rep. Berman) (observing that 30% of the filings in Los Angeles alone were attributable to so-called "typing services"—many of them repeat filings designed to forestall evictions); 140 Cong. Rec. S14597 (Oct. 7, 1994) (statement of Sen. Metzenbaum). Sponsors of the legislation expressed a desire to see Congress control the proliferation of "bankruptcy typing mills" which were said to have "unfairly preyed upon" people who "do not speak English or understand the bankruptcy system." 140 Cong. Rec. H10772 (Oct. 4, 1994) (statements of Rep. Berman). Representative Berman noted that bankruptcy petition preparers often take advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system, and that the proposed law was designed to protect individual debtors from "bankruptcy petition preparers who negligently or fraudulently prepare bankruptcy petitions." *Id.*, at 140 Cong. Rec. H10771. It was hoped that the new law would regulate abuses by non-attorney bankruptcy petition preparers and would (hopefully) provide at least minimal protection to debtors/consumers.[13] *See e.g. In re Green*, 197 B.R. 878, 879 (Bankr.D.Ariz.1996); *In re Murray*, 194 B.R. 651 (Bankr.D.Ariz.1996); *In re Gavin*, 181 B.R. 814 (Bankr.E.D.Pa.1995).

### B. Substantive Requirements of § 110

### 1. Section 110 only applies to a Bankruptcy Petition Preparer

Section 110 only applies to what the statute denominates as a "bankruptcy petition preparer," defined as "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1). "Document for filing" is defined as "a petition or any other document

---

12. If true, Divins' conduct could subject her to criminal liability in either state or federal court. This court lacks criminal jurisdiction, and so leaves that particular question matter to another day and another forum. However, in addition, section 110(*i*) directs a bankruptcy court to certify a finding of false or fraudulent conduct in connection with a petition preparer to the district court for further proceedings. To that extent, the factual finding is important to the resolution of the matter pending before this court. *See* discussion *infra.*

13. Representative Berman pointed out that bankruptcy petition preparers lack the necessary legal training and ethics regulation to provide bankruptcy services in an adequate and appropriate manner. *See* 140 Cong. Rec. H10771. The consumer protections offered by Section 110 highlight a very real concern: petition preparers are not licensed. Attorneys *are* licensed, and their codes of professional conduct of necessity hold them to a higher standard than petition preparers, who are both unlicensed and unregulated. For example, attorneys are subject to competency requirements and character assessments before they receive a law license. Petition preparers are presently subject to no competency requirements or licensing procedures. Attorneys can also be disbarred, suspended or otherwise sanctioned if they fail to obey court rules or ethical rules promulgated by the state bar. When an attorney's conduct breaches the professional standard of care and damage results, the law provides the client relief. No such remedy was then available against petition preparers. Section 110 was an attempt by Congress to fill that gap.

prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under [Title 11]." 11 U.S.C. § 110(a)(2).

■ The evidence demonstrated that Divins falls within this statutory definition. She is a person who assists debtors in preparing bankruptcy documents (certainly this debtor, at the very least). In fact, Divins did more than just "assist" this debtor. In this case, Divins prepared a template Chapter 13 petition, and checked all of the boxes on the actual petition, including type of debtor, the chapter under which the case was being filed, the number of creditors, the intention to file a plan, and the estimated assets and liabilities. She also took her to the courthouse, and counseled her what to say (and not say) at the first meeting of creditors. Thus, section 110 applies to Ms. Divins.

### 2. Section 110 Compliance Requirements

Section 110 establishes a set of requirements with which bankruptcy petition preparers must comply. Petition preparers must sign all documents they prepare and must include their name, address and social security number on those documents. *See* 11 U.S.C. § 110(b)(1), (c)(1). They must furnish debtors with a copy of all documents they prepare. *See* 11 U.S.C. § 110(d)(1). Within ten days after the filing of a bankruptcy petition, the petition preparer must file a declaration with the court stating all compensation they received from the debtor in the twelve months preceding the filing. *See* 11 U.S.C. § 110(h)(1).[14] These compliance requirements are designed to "create a paper trail to identify non-attorneys who prepare documents to be filed by bankruptcy debtors." 2 Lawrence P. King, Collier on Bankruptcy, ¶ 110.01 (15th ed. (rev.) 1998).

Divins failed to satisfy these compliance requirements. Though she prepared both the petition and the schedules on behalf of the debtor, she did not sign the documents where indicated, nor did she furnish her name and address on the documents. None of the documents prepared by Divins reflected her social security number, though she was the person who had prepared the documents. Divins also did not file a declaration disclosing the amount of fees she received for preparing the bankruptcy documents. In short, Divins did her level best to make sure that there would be *no* paper trail leading back to her involvement in the debtor's bankruptcy filing. In so doing, she contravened the compliance requirements imposed by section 110, and in so doing attempted to frustrate one of the principle regulatory functions of the statute. She sought to evade regulation entirely.

### 3. Section 110 Conduct Prohibitions

■ Section 110 also contains certain conduct prohibitions. Bankruptcy petition preparers are prohibited from "executing any document on behalf of a debtor," § 110(e)(1), from using the word "legal" or any related term in advertising, § 110(f)(1), and from collecting court filing fees from debtors, § 110(g)(1).[15] Bank-

---

14. The court may impose fines of up to $500 for each violation of these requirements. Also, the bankruptcy court may issue an injunction enjoining a person from further acting as a bankruptcy petition preparer. *See* § 110(j).

15. Some districts have enacted supplemental conduct prohibitions, designed to flush out the statutory prohibitions. For example, in the Northern District of California, a bankruptcy petition preparer may not instruct or advise the debtors, either directly or indirectly:

(i) Whether to file a bankruptcy petition;
(ii) Under which chapter of the Bankruptcy Code to file the voluntary petition;
(iii) How to respond to the bankruptcy forms required in connection with the filing of the bankruptcy case;
(iv) What exemptions should be claimed;
(v) Whether any particular debts are dischargeable or nondischargeable;

ruptcy courts may impose statutory fines of up to $500 for each violation of these prohibitions. The evidence indicates that Divins carefully avoided violating any of these technical prohibitions.

However, § 110 also forbids a bankruptcy petition preparer in general from committing a "fraudulent, unfair, or deceptive act." [16] Here, Divins was less careful. First, the evidence shows that Divins committed a fraudulent and deceptive act by attempting to transfer her utility bill to the name of the debtor with the evident intention that the charges for those services (in excess of $3,000.00) then be discharged in the debtor's bankruptcy case.

Divins also engaged in fraudulent and deceptive conduct when she both offered and provided legal services without a law license. Section 110 expressly provides that "nothing in this section shall be construed to permit activities that are otherwise prohibited by law, including rules and laws that prohibit the unauthorized practice of law." *See* § 110(k). If Divins violated state law rules regarding the unauthorized practice of law, she will find no protection in section 110. And Divins in

(vi) The effect of a bankruptcy filing upon a foreclosure and whether the debtor(s) may keep a home;
(vii) Whether the debtor(s) may avoid or eliminate any liens or recover any assets in connection with the bankruptcy case;
(viii) Whether the debtor(s) may redeem property;
(ix) Whether the debtor(s) may or should reaffirm any debts;
(x) Whether the debtor(s) is entitled to a discharge under the Bankruptcy Code, and what defenses the debtor may have to an objection to discharge; and
(xi) Concerning the tax consequences of any aspect of the bankruptcy case.
*See* Bankruptcy Petition Preparer Guidelines, United States Bankruptcy Court for the Northern District of California, as referenced in *In re Agyekum,* 225 B.R. 695, 701 (9th Cir. BAP 1998).

16. Section 110 empowers the bankruptcy court to issue injunctive relief against petition preparers when it is necessary to prevent the recurrence of conduct which violates § 110's prohibitions or is otherwise "fraudulent, unfair, or deceptive." *See* § 110(j). When a

fact did in fact violate such rules in this case.

■ Bankruptcy courts look to state law to determine what constitutes the unauthorized practice of law. *See In re Stacy,* 193 B.R. 31, 38 (Bankr.D.Or.1996); *In re Lyvers,* 179 B.R. 837, 840 (Bankr.W.D.Ky. 1995); *In re Samuels,* 176 B.R. 616, 620 (Bankr.M.D.Fla.1994); *In re Bright,* 171 B.R. 799 (Bankr.E.D.Mich.1994).[17] Texas Government Code § 81.101(a) defines the practice of law as:

[T]he *preparation* of a pleading or other *document* incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court *as well as a service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a* will, contract, *or other instrument,* the legal effect of which under the facts and conclusions involved must be carefully determined.

TEX. GOV'T CODE ANN. § 81.101(a) (Vernon 1988) (emphasis added).[18] *See e.g. Davies*

bankruptcy petition preparer violates any of the express prohibitions in § 110 or commits any fraudulent, unfair, or deceptive act, the bankruptcy court is instructed by statute to certify that fact to the district court, which may award further relief to the debtor, the trustee, or a creditor who seeks to enforce § 110. *See* 11 U.S.C. § 110(i)(1).

17. The practice of law involves a public interest, and it is the right and duty of the state to regulate it and control it so that the public safety and welfare will be served and promoted. *See Palmer v. Unauthorized Practice Committee of State Bar of Tex.,* 438 S.W.2d 374 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ).

18. In its entirety Section 81.101 provides:

(a) In this chapter the "practice of law" means the preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court, including the giving of advice or the rendering of any

*v. Unauthorized Practice Committee of State Bar of Texas*, 431 S.W.2d 590, 593 (Tex.Civ.App.—Tyler 1968, writ ref'd n.r.e.); *Quarles v. State Bar of Tex.*, 316 S.W.2d 797, 803 (Tex.Civ.App.—Houston 1958), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962); *Hughes v. Fort Worth Nat. Bank*, 164 S.W.2d 231, 234 (Tex.Civ.App.—Ft.Worth, 1942, no writ).

■ This statutory definition is not exclusive, however. TEX. GOV'T CODE ANN. § 81.101(b) (Vernon 1988). In Texas, courts have the inherent power to determine whether other services and acts not expressly enumerated in the definition might also constitute the practice of law. *See id.; see also Unauthorized Practice of Law Committee v. Cortez*, 692 S.W.2d 47, 50 (Tex.1985). The practice of law embraces all advice to clients and all action taken for them in matters connected with the law. *See Brown v. Unauthorized Practice of Law Committee*, 742 S.W.2d 34, 41 (Tex.App.—Dallas 1987, writ denied).[19]

■ Preparing bankruptcy documents and giving advice regarding bankruptcy matters of necessity constitutes the practice of law. Bankruptcy documents simply cannot be prepared without having to make legal decisions.[20] The debtor must decide under which chapter of bankruptcy to file, what property to claim as exempt, how to classify debts, and (if the petition is under Chapter 13) how and when to file a plan.[21] Even the simplest bankruptcy cases require a familiarity with principles of bankruptcy and state property law which are beyond a layperson's knowledge. When the petition preparer makes these choices for the debtor, the petition preparer is practicing law.

■ Congress recognized this reality. In fact, Congress enacted § 110 precisely *because* bankruptcy petition preparers were attempting to provide legal advice and services which were beyond their knowledge and competence. *See* HR Rep. 103–835, 103rd Cong., 2nd Sess 56 (Oct. 4, 1994), U.S.Code Cong. & Admin.News 1994, 3340, 3365; 140 Cong. Rec. H10770 (Oct. 4, 1994) (bankruptcy petition preparers lack the "necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner"). Congress was also concerned that debtors would be at the mercy of fly-by-night "typing mills" that would lull the unsuspecting public into thinking that they had the expertise to offer valuable legal (or at least quasi-legal) bankruptcy assistance. Congress' fear was that bankruptcy petition preparers might "take unfair advantage of persons who are ignorant of their rights

service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined.

(b) The definition in this section is not exclusive and does not deprive the judicial branch of the power and authority under both this chapter and the adjudicated cases to determine whether other services and acts not enumerated may constitute the practice of law.

(c) In this chapter, the "practice of law" does not include the design, creation, publication, distribution, display, or sale, including publication, distribution, display, or sale by means of an Internet web site, of written materials, books, forms, computer software, or similar products if the products clearly and conspicuously state that the products are not a substitute for the advice of an attorney. This subsection does not authorize the use of the products or similar media in violation of Chapter 83 and does not affect the applicability or enforceability of that chapter.

19. One Texas court has even recognized that a "person may confer legal advice not only by word of mouth but also by a course of conduct . . . ." *Brown v. Unauthorized Practice of Law Committee*, 742 S.W.2d 34, 40 (Tex. App.—Dallas 1987, writ denied).

20. In fact, the phrase "bankruptcy petition preparer" is really an oxymoron. It is impossible to prepare a bankruptcy petition without also practicing law.

21. The plan compels still more legal "calls"— how to classify claims, how to treat claims in a manner consistent with sections 1322 and 1325, and the like.

both inside and outside the bankruptcy system." *Id.* In short, one specific target of the statute was the inherently dangerous unauthorized practice of law by petition preparers.

It is easy to see that Divins engaged in the unauthorized practice of law. Divins insists that she does not practice law, but, her protestations notwithstanding, she in fact gave the debtor in this case legal advice. First, Divins held herself out as a person who could assist persons in "stopping foreclosure," a result that could only be accomplished by state court injunction or a federal bankruptcy filing.[22] Second, Divins provided the debtor bankruptcy information accompanied by her own interpretation of that information and advice on what to do with it. In particular, Divins assisted the debtor in selecting how creditors would be treated and advised the debtor regarding what exemptions to claim and under which chapter to file.[23] Additionally, Divins solicited financial information from the debtor which Divins then used to prepare a statement itemizing the debtor's monthly income and expenditures.[24] Divins's operation of a refinancing business and her training in and knowledge of bankruptcy law, no matter how extensive, does not give her a license to practice law.[25]

**22.** The operative word in Divins' representation was "stop." Assisting in negotiations with a lender, or in finding a new lender are not steps that the average person would consider as *stopping* foreclosure. Successful negotiations might *prevent* or *forestall* the foreclosure proceedings, because the lender either elects to draw down the foreclosure or is paid off. But offering to *stop* foreclosure suggests to the consumer that the actor can take steps to interfere with the lender's foreclosure, without the lender's consent. Of course a debtor's voluntarily paying off the home loan would also "stop" the foreclosure, but few debtors have that sort of thing in mind when they consider seeking someone else's assistance to stop the foreclosure.

**23.** Choosing the chapter under which to file is an important legal decision having significant ramifications for the debtor. A debtor who chooses chapter 7 may well lose her house as a result. A debtor who chooses chapter 13, but who cannot thereafter propose a confirmable plan may lose her house, her car, and the chance to correct the errors. A petition preparer who "helps" the debtor make that choice has given legal advice.

**24.** Divins intended to use this financial information to prepare the debtor's Chapter 13 Plan.

**25.** In fact, numerous other courts have concluded that actions similar to Divins' constitute the unauthorized practice of law. *See* Hastings v. United States Trustee (*In re Agyekum* ), 225 B.R. 695, 702 (9th Cir. BAP 1998) (preparer's use of questionnaire which solicited information he then used to complete petitions was unauthorized practice of law); *In re McDaniel*, 232 B.R. 674, 679 (Bankr. N.D.Tex.1999) (preparer gave clients unauthorized legal advice when he "applie[d] the statutes, rules, and information from publications to the facts of the particular cases" and when he "selected how creditors would be treated in the case"); *In re Moore*, 232 B.R. 1, 8 (Bankr.D.Me.1999) (preparer gave legal advice without a license by informing debtor about bankruptcy chapters, selecting her exemptions, and opining on her ability to dispose of assets); *Ostrovsky v. Monroe (In re Ellingson)*, 230 B.R. 426, 433–34 (Bankr. D.Mont.1999) (preparer engaged in unauthorized practice of law when she advised debtors of available exemptions, "determined where property and debts were to be scheduled, summarized and reformulated information solicited from clients, and generated the completed bankruptcy forms"); *In re Gabrielson*, 217 B.R. 819, 826–27 (Bankr.D.Ariz. 1998) (finding that advising debtors about exemptions and which bankruptcy chapter to file, as well as drafting pleadings, is the practice of law); *In re Kaitangian*, 218 B.R. 102, 110–13 (Bankr.S.D.Cal.1998) (finding that preparer engaged in unauthorized practice of law by advising debtors about exemptions, selection of appropriate chapters, reaffirmation of debts, the timing of bankruptcy filing, classification of debt, and the dischargeability of student loans); *United States Trustee v. Tank (In re Stacy)*, 193 B.R. 31, 39 (Bankr. D.Or.1996) (preparer's practices constitute unauthorized practice of law because his activities "involve the exercise of informed or trained discretion in advising another of his or her legal rights and duties"); *In re Lyvers*, 179 B.R. 837, 842 (Bankr.W.D.Ky.1995) (preparer engaged in unauthorized practice by answering debtors' questions concerning completion of bankruptcy petitions and advising debtors about exemptions); *In re Bright*, 171 B.R. 799, 803–05 (Bankr.E.D.Mich.1994)

## C. Services permitted to be provided by nonattorneys under § 110

Notwithstanding the express prohibitions we have discussed in the previous section, some persons no doubt believe that § 110 *authorizes* or *legitimizes* quasi-legal assistance under the rubric of "bankruptcy petition preparer." Indeed, in many cities, there are persons who now advertise their services as "bankruptcy petition preparers" in newspapers and other media, suggesting by reference to § 110 itself that Congress *created* and *legitimized* their profession, thereby permitting them to hold themselves out to the public as a federally recognized professional and to offer their services for sale, so long as they comply with the statute.[26]

■ In an effort to regulate, did Congress in fact proliferate? This court thinks not. Congress explained that its purpose in enacting § 110 was *not* to authorize a new profession, but rather to provide a remedy against a growing number of non-attorneys who were rendering quasi-legal (and legal) services in bankruptcy cases to the detriment of both the bankruptcy system and the consuming public.[27] Indeed, the House Judiciary Committee's Report made clear what Congress' intentions were in enacting § 110:

> Bankruptcy petition preparers not employed or supervised by any attorney have proliferated across the country. *While it is permissible for a petition preparer to provide services solely limited to typing, far too many of them also attempt to provide legal advice and legal services to debtors.* These preparers often lack the necessary legal training and ethics regulation to provide such services in an adequate and appropriate manner. These services may take un-

fair advantage of persons who are ignorant of their rights both inside and outside the bankruptcy system.

HR Rep. 103–835, 103rd Cong., 2nd Sess 56 (Oct. 4, 1994), U.S.Code Cong. & Admin.News 1994, 3340, 3365; 140 Cong. Rec. H10770 (Oct. 4, 1994) (House Judiciary Committee Report). Section 110 is remedial in nature. It was designed to curb a growing phenomenon perceived to be inflicting harm. Section 110 does not authorize or legitimize a "profession" as such; instead, it recognizes an existing phenomenon, labels its practitioners, then enacts conduct-based proscriptions on their services.

The phrase "bankruptcy petition preparer" employed by the statute has no independent legal significance. In regulating a practice, Congress had to call the perpetrators something. It chose to call them bankruptcy petition preparers. Of course, the nature of "regulation" is that *some* behavior *is* permissible. But the legislative history, coupled with section 110's express recognition that state unauthorized practice of law statutes *still* govern the activities of petition preparers and are not preempted, *see* § 110(k), confirms that whatever it is that § 110 tacitly permits, it most certainly *does not* authorize non-attorneys to practice law by preparing bankruptcy petitions. *See Patton v. Scholl,* 1999 WL 431095 (E.D.Pa.1999).

■ So what *does* § 110 tacitly permit? The answer in a nutshell is "not much." Section 110 itself proscribes virtually all conduct falling into the category of guidance or advice, effectively restricting "petition preparers" to rendering only "scriven-

---

(preparer's activities constituted unauthorized practice of law). *See also In re Gavin,* 181 B.R. 814, 821 (Bankr.E.D.Pa.1995) (citing cases).

**26.** One such advertisement appeared recently in a local San Antonio newspaper. *See* attached Appendix One.

**27.** In other words, § 110 was created as a consumer protection device. *See* our earlier analysis at III. A.

ing/typing" services.[28] Anything else—be it suggesting bankruptcy as an available remedy for a debtor's financial problems, merely explaining how to fill out the schedules, or answering questions about exemptions or whether a claim is or is not secured will invariably contravene either state laws proscribing the unauthorized practice of law or other more specific provisions of § 110. The only service that a bankruptcy petition preparer can safely offer and complete on behalf of a *pro se* debtor after the enactment of § 110 is the "transcription" of dictated or handwritten notes prepared by the debtor prior to the debtor having sought out the petition preparer's service.[29] Any other service provided on behalf of the debtor by a non-attorney (even telling the debtor where the information goes on the form) is *not* permitted under state unauthorized practice of law statutes, and so is also not authorized by § 110.[30]

### D. A Reasonable Typing Fee under § 110

■■■■ Divins collected a fee of $1,767.00 from the debtor in this case for services ostensibly rendered to the debtor. Section 110 does not authorize petition preparers to collect fees. It only prohibits excessive fees. 11 U.S.C. § 110(h)(2) and (3). The court may disallow any excessive fees paid to a bankruptcy petition preparer and order the petition preparer to turn

over the excess to the bankruptcy trustee.[31]

■■■■ Assuming Divins had merely transcribed documents for the debtor (which she did not), the amount she collected was excessive. Most courts have held that a reasonable fee for typing bankruptcy petitions is between $50.00 and $150.00. *See In re Mullikin,* 231 B.R. 750 (Bankr.W.D.Mo.1999) (holding that fees can never exceed $150.00); *Hastings v. United States Trustee (In re Agyekum),* 225 B.R. 695, 702 (9th Cir. BAP 1998) (affirming lower court's determination that a bankruptcy petition preparer fee could not exceed $125.00); *In re Burdick,* 191 B.R. 529, 538 (Bankr.N.D.N.Y.1996) (allowing $50 for services provided by a bankruptcy petition preparer); *In re Cordero,* 185 B.R. 882, 884 (Bankr.M.D.Fla.1995) (allowing $50 for services provided by a bankruptcy petition preparer); *In re Cochran,* 164 B.R. 366, 370 (Bankr.M.D.Fla. 1994) (allowing $50 for services provided by a bankruptcy petition preparer). We hold that a reasonable fee for transcription services performed on a *pro se* debtor's behalf (including the fee for typing the documents and other expenses such as photocopying, courier services, postage, telephone, etc.), at the current time and in the current marketplace, cannot exceed $50.00. *Accord In re Burdick,* 191 B.R. at 538; *In re Cordero,* 185 B.R. at 884; *In re*

---

**28.** The unfortunate choice of words on the part of Congress was its use of the term "preparer". The legislative history itself suggested that by "prepare", Congress meant "type".

**29.** Said another way, § 110 allows bankruptcy petition preparers to type information that debtors themselves have expressly and unequivocally indicated should be entered on each section of the bankruptcy petition, schedules, or any other bankruptcy document.

**30.** Consider the reliance placed on the presence or absence of an answer to a given question on the schedules, which are signed under penalty of perjury. If a debtor leaves

something out on the advice of a petition preparer—is that a defense in a § 727 action?

**31.** Of course, all fees collected by Divins in this case must be disgorged because Divins has engaged in the unauthorized practice of law. *See In re Farness,* 244 B.R. 464, 473 (Bankr.D.Idaho 2000); *In re Gavin,* 181 B.R. 814, 821 (Bankr.E.D.Pa.1995) (stating that when a petition preparer is found to have engaged in the unauthorized practice of law "all fees received would have to be disgorged as fruits of illegal and improper actions, irrespective of the quantum meruit value of such services"). Nonetheless, we will address the propriety of the $1,767.00 fee assuming that Divins had only provided typing services to the debtor.

*Cochran,* 164 B.R. at 370.[32]  The amount charged by Divins ($1,767.00) is excessive by $1,717.00.[33]

## IV. CONCLUSION

Divins violated § 110 of the Bankruptcy Code and a prior order of this court. She failed to disclose that she was even offering bankruptcy preparation services, an express violation of § 110, fraudulently attempted to transfer one of her debts to the debtor to get the debt discharged, and practiced law without a license by encouraging the debtor to use bankruptcy to stop a foreclosure, then selecting the chapter and deciding how to classify assets and liabilities for the debtor in her schedules. She violated Judge King's prior orders prohibiting her from offering bankruptcy advice to anyone. Divins did not merely type bankruptcy documents. To the contrary, her entire operation was the practice of law without a license. Because Divins engaged in the unauthorized practice of law, § 110 requires her to forfeit all of the fees she collected in this case. Furthermore, because Divins repeatedly[34] engaged in conduct violative of § 110(j)(2)(A), a permanent injunction must be issued to prevent further violations.[35]  11 U.S.C. § 110(j)(2)(B).

We hold that (1) § 110 only permits bankruptcy petition preparer to "type" dictated or handwritten documents that have been prepared prior to the debtor seeking the assistance of the scrivening/typing service, and (2) a reasonable fee for typing services, under § 110, cannot exceed $50.00. Judge Jay Cristol, of the Southern District of Florida, got it right when he issued the following warning in *In re Hidalgo:* "Let all individuals who are preying upon the misery and misfortune of poor people by taking their last dollars for false counsel, beware. The full power of the court will be used to discover and appropriately sanction such wrongdoers." *In re Hidalgo,* 96 B.R. 389, 390 (Bankr.S.D.Fla. 1988).

---

**32.** Of course this amount is not absolutely set in stone. The fee amount is subject to reasonable future increases accounting for inflation and other economic influences.

**33.** Indeed, a licensed practicing bankruptcy attorney does not charge a $1,767.00 fee for simply preparing bankruptcy documents. It would be absurd to permit a non-attorney to collect a fee in excess of that which is reasonably collected by a licensed bankruptcy attorney.

**34.** Recall that Judge King had already enjoined her from engaging in just this sort of conduct.

**35.** *See* Order On Order To Appear And Show Cause attached as Appendix Two.

300

## APPENDIX ONE

**8** Thursday, January 6, 2000

# BANKRUPTCY ASSISTANCE

**$250⁰⁰**
for All Chapter 7
Cases
(Does Not Include Filing Fees)

**BANKRUPTCY PETITION PREPARER**
Pursuant to 11 U.S.C. §110

FREE INITIAL CONSULTATION.
CALL FOR APPOINTMENT
(877) 682-3593

**STEPHEN C. MURPHY**
Preparing Bankruptcies since 1993

2435 Boardwalk, San Antonio, TX 78217

Stephen C. Murphy, Bankruptcy Assistance Advertisement, *The Northside Recorder*, January 6, 2000, at 8.

## APPENDIX TWO

### *ORDER ON ORDER TO APPEAR AND SHOW CAUSE*

CAME ON for hearing on November 11 and November 29, 1999, this Court's *Order to Appear and Show Cause*, entered on October 28, 1999, directing Rosario Divins to appear and show cause why orders should not be entered adjudging Ms. Divins in contempt of court, enjoining her from further activity as a petition preparer or bankruptcy advisor, and assessing fines. The hearing, which was commenced on November 11, 1999, was continued to allow Ms. Divins time to retain counsel, and was concluded on November 29, 1999. The Court, having considered the pleadings on file, the testimony of the Debtor and Ms. Divins, and the evidence, made findings of fact and conclusions of law on the record pursuant to Fed. R. Bankr.P. 7052. Based thereon, it is hereby

ORDERED that Rosario Divins, a/k/a Rosie Divins, shall, within thirty days of the entry date of this Order, pay the sum of $1,700, which represents the funds paid to Ms. Divins by the Debtor, to the Office of the Chapter 13 Trustee, Marion A. Olson, Jr.; it is further

ORDERED that Rosario Divins shall, within thirty days of the entry date of this Order, pay the additional sum of $1,000 to the Office of the Chapter 13 Trustee as a sanction for Ms. Divins' violation of a prior court Order entered by Judge Ronald B. King in the case of Oralia Lara, Case No. 99–51228–13, in 1994; it is further

ORDERED that Rosario Divins shall, within thirty days of the entry date of this Order, pay the additional sum of $500 each to the Office of the Chapter 13 Trustee for violations of §§ 110(b), (c), and (h) of the Bankruptcy Code, respectively, for a total of $1,500; it is further

ORDERED that, in the event that the sum of $1,700 is paid to the Office of the Chapter 13 Trustee within the time period set forth in this Order, the $1,500 fine assessed in the previous paragraph shall be reduced to the sum of $1,000; it is further

ORDERED that Rosario Divins is hereby permanently enjoined from engaging in the following specific activities:

A.  Offering or providing any bankruptcy petition preparation service or activity on behalf of anyone at any time and in any fashion;

B.  Making any representation of any kind, express or implied, to any individual or to the public that Rosario Divins or persons associated with her can or would assist or help or ever try to assist or help any individual or persons to "stop foreclosure";

C.  Making any representation, express or implied, that "mortgage brokering services" can or may be able to assist any individual or persons to "stop foreclosure";

D.  Making any representation, express or implied, to any individual or persons that Rosario Divins or persons associated with her can assist with bankruptcy filings, actually help debtors file bankruptcy cases, or advise individuals or persons with respect to a bankruptcy case.

It is further

ORDERED that Rosario Divins shall, within thirty days of the date of same, provide proof of repayment of all fees and sanctions to the Office of the United States Trustee, P.O. Box 1539, San Antonio, Texas, 78295–1539, ATTN: Patricia Barsalou; finally, it is

ORDERED that failure to comply with the terms of this Order may result in a finding that Rosario Divins is contempt of Court, which finding could result in the assessment of additional fines and/or penalties, or incarceration.