In re Christina M. MORAN, Debtor.

In re Arlene L. Pellerin, Debtor.

In re Robert L. Dunlap, Debtor.

In re Martin L. Heck, Debtor.

In re Sue Jan Udall, Debtor.

In re Dennis St. Pierre and Kellyann St. Pierre, Debtors.

In re Larry S. Kimball and Viola A. Kimball, Debtors.

In re Tony E. Hibbard and Lisa J. Hibbard, Debtors.

In re Ann M. Morse, Debtor.

In re Kelly M. Platon, Debtor.

In re Jean M. Duffy, Debtor.

Nos. 00–11365–JMD, 00–11425–JMD, 00–11908–JMD, 00–12048–JMD, 00–12258–MWV, 00–12343–MWV, 00–12433–JMD, 00–12461–MWV, 00–12483–MWV, 00–12585–JMD, 00–12680–MWV.

United States Bankruptcy Court, D. New Hampshire.

Nov. 28, 2000.

Michael M. Mills, Jr., d/b/a Alternative Assistance, pro se petition preparer.

David G. Winner, pro se petition preparer.

Albert E. Paquette, pro se petition preparer.

Geraldine B. Karonis, Manchester, NH, Assistant United States Trustee.

### MEMORANDUM OPINION

MARK W. VAUGHN, Chief Judge.

J. MICHAEL DEASY, Judge.

## I. INTRODUCTION

The Court has before it motions filed by the United States Trustee ("UST") in ten separate bankruptcy cases seeking an order determining a reasonable fee for petition preparers and requiring the petition preparers in the ten cases to disgorge any fees collected in excess of that amount.[1] The ten cases involve three different bankruptcy petition preparers, namely, Michael M. Mills, Jr. d/b/a Alternative Assistance ("Mills"), David G. Winner ("Winner"), and Albert E. Paquette ("Paquette"). Because the UST's ten motions were virtually identical, the Court decided to consolidate these motions for hearing in order to promote judicial economy. Accordingly, the judges of this Court held a joint hearing on the motions on November 2, 2000 at which time the Court took evidence and heard arguments from the parties. At the conclusion of the hearing, the Court took the motions under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. BACKGROUND

Mills prepared the bankruptcy petitions in six of the ten cases on for hearing in which the UST filed a motion requesting that the Court set a reasonable fee for petition preparers and order the disgorgement of any fees in excess of that amount. Winner and Paquette each prepared petitions in two of the ten cases. The relevant facts are as follow.

### A. Mills' Cases

For the last five years, Mills has been preparing bankruptcy petitions for clients.

---

1. The Court notes that the UST filed a motion in an eleventh case, *In re Heck,* Bk. No. 00–12048–JMD, seeking the disgorgement of fees and imposition of sanctions against the petition preparer based on the petition preparer's failure to disclose his compensation in a skel- eton Chapter 13 case. While the *Heck* case was consolidated with the other cases for hearing, the Court will issue a separate order as the facts and the relief requested by the UST warrant separate treatment by the Court.

Mills testified that he charges $295 to prepare an individual petition and $320 to prepare a joint petition. Mills' services include: an initial consultation with the client, usually over the telephone; a meeting with the client where they spend about an hour and a half going over the client's bills and figuring out whether the client can pay off his or her creditors; preparation of the petition, schedules, and statements; proofreading the completed forms; making copies; and then a final meeting with the client where they review the petition, schedules, and statements. Mills also explains to his clients how to file the petition, which includes providing his clients with a map to the bankruptcy court.

Mills does not actually type his clients' petition, schedules, and statements. Rather, his wife types them for Mills for a fee. She charges Mills $1 per page or approximately $30 to $32 per petition. Mills further testified that he makes the requisite number of copies at a copy shop which charges approximately $15 for the copies.

The following are details regarding the preparation and filing of the petitions in the six Mills cases currently pending before the Court.

### 1. Moran

Mills prepared a Chapter 7 bankruptcy petition on behalf of Christina Moran for $295. On his compensation disclosure form, Mills indicated that he performed only bankruptcy petition preparation services. On May 4, 2000, Ms. Moran filed her Chapter 7 case. On August 31, 2000, the UST filed a motion seeking the determination of a reasonable fee for petition preparers and disgorgement of any fees collected in excess of that amount.

### 2. Pellerin

Mills prepared a bankruptcy petition on behalf of Arlene Pellerin for $295. On his disclosure of compensation form, Mills indicated that he provided only petition preparation services. Ms. Pellerin filed her Chapter 7 petition on May 11, 2000. The UST filed a motion on August 31, 2000 seeking the determination of a reasonable fee for petition preparers and seeking the disgorgement of any fees charged in excess of that amount.

### 3. St. Pierre

Mills prepared a joint petition on behalf of Dennis and Kellyann St. Pierre for $320. Mills indicated on his disclosure of compensation form that he performed no other services other than preparing the St. Pierres' petition. Mr. and Mrs. St. Pierre filed their petition on August 17, 2000. The UST filed a motion on September 5, 2000 seeking the determination of a reasonable fee for petition preparers and the disgorgement of any fees charged in excess of that amount.

### 4. Kimball

Mills prepared a Chapter 7 bankruptcy petition for Larry and Viola Kimball for $320. On his disclosure of compensation statement, Mills indicated that he prepared the Kimballs' bankruptcy petition and provided no other services. The Kimballs filed their Chapter 7 case on August 24, 2000. The UST filed a motion on September 12, 2000 seeking the determination of a reasonable fee for petition preparers and the disgorgement of any fees charged in excess of that amount.

### 5. Platon

Mills prepared a petition on behalf of Kelly Platon for $295. On his disclosure of compensation form, Mills indicated that he did not provide any other services. Ms. Platon filed her petition on September 8, 2000. The UST filed a motion on September 12, 2000 seeking the determination of a reasonable fee for petition preparers and the disgorgement of any fees charged in excess of that amount.

### 6. Duffy

Mills prepared a petition on behalf of Jean Duffy for $295. On his statement of

disclosure of compensation, he indicated that in addition to preparing Ms. Duffy's bankruptcy petition he also provided an "analysis and consultation [sic] of debt." No itemization of his total fee was provided. Ms. Duffy filed her case on September 21, 2000. The UST filed a motion four days later seeking the determination of a reasonable fee for petition preparers and the disgorgement of any fees charged in excess of that amount.

## B. Winner's Cases

Winner has been preparing bankruptcy petitions since 1993 and, for the last three years, he and his wife have been preparing bankruptcy petitions full time. Winner and his wife charge $350 for their services, $80 of which is attributable to debt and credit counseling. Winner testified that the rate is not an hourly rate but rather a rate set by the services provided. Winner admits that he does not keep track of the time he spends with clients or the time he spends preparing their petitions, schedules, and statements. However, Winner estimates that he usually spends about three hours with his clients going over each question face-to-face and then another three hours typing the documents. Winner further testified that he is getting out of the petition preparation business. The facts relevant to the Winner cases at issue are as follows.

### 1. Dunlap

Winner prepared a petition on behalf of Robert Dunlap for $270. He also performed credit and debt counseling and an analysis of Mr. Dunlap's financial situation for which he charged Mr. Dunlap $80. Winner testified that he spent about five or six hours meeting with Mr. Dunlap.

Mr. Dunlap filed his petition on June 28, 2000. The UST filed a motion on August 31, 2000 seeking the determination of a reasonable fee for petition preparers and the disgorgement of any fees charged in excess of that amount. Winner stated that he voluntarily refunded all but $100 to Mr. Dunlap since the filing of the UST's motion.

### 2. Morse

Winner prepared a Chapter 7 petition for Ann Morse for $270. Winner testified that he spent more time with Ms. Morse than he did with other clients. Winner stated that Ms. Morse must have telephoned him fifteen times with questions.

On his compensation disclosure statement, Winner indicated that he prepared Ms. Morse's petition and accompanying documents, reviewed them and made copies, and provided "professional credit and debt consulting" as well an "analysis of the debtor's financial situation/options," for which he received an additional $80. Ms. Morse filed her bankruptcy case on August 29, 2000. The UST filed a motion on September 5, 2000 seeking the determination of a reasonable fee for petition preparers and the disgorgement of any fees charged in excess of that amount. Winner stated that he voluntarily refunded all but $100 to Ms. Morse since the filing of the UST's motion.

## C. Paquette's Cases

Paquette testified that he has been providing paralegal-type services for the past twenty-five years, and he has been assisting individuals filing bankruptcy for about twelve years. Paquette has charged debtors anywhere from $200 to $350 for his services. The particular facts relevant to Paquette's cases are as follows.

### 1. Udall

Paquette prepared a petition on behalf of Sue Jan Udall for $300. Paquette signed Ms. Udall's petition and disclosed his fee for services as required by statute. Paquette also disclosed that he provided additional services to Ms. Udall including discussing budgeting and consolidation of debt, sending letters to creditors on the day of filing, and attending the creditors' meeting with the debtor. Ms. Udall filed her Chapter 7 case on August 7, 2000. The

UST filed a motion on September 5, 2000 seeking the determination of a reasonable fee for petition preparers and the disgorgement of any fees charged in excess of that amount.

### 2. Hibbard

Paquette prepared a petition for Tony and Lisa Hibbard for $350. Paquette testified that, prior to preparing the Hibbards' petition, schedules, and statements, he met with the Hibbards to discuss their budget, their bills, and debt consolidation. When the Hibbards decided to file bankruptcy, he spent two to three hours with them having them answer the questions on the statement of financial affairs and the petition. Paquette then typed the documents with an old typewriter and made copies. Paquette also accompanied the Hibbards on the four and a half hour round trip between North Conway and the bankruptcy court to file their petition on August 25, 2000. In addition, on the day of filing, Paquette sent out a letter he prepared for the Hibbards' signature advising creditors of the Hibbards' bankruptcy. He also accompanied the Hibbards to the first meeting of creditors. In total, Paquette estimates that he spent as many as twelve hours working with the Hibbards.

Paquette disclosed the above-described services on his disclosure of compensation form. On August 31, 2000, shortly after the Hibbards filed their bankruptcy case, the UST filed a motion seeking the determination of a reasonable fee for petition preparers and the disgorgement of any fees charged in excess of that amount.

## III. DISCUSSION

### A. The Statute

In 1994, the Bankruptcy Code was amended to include a provision relating to bankruptcy petition preparers. *See* 11 U.S.C. § 110. The provision was enacted as a consumer protection measure. *See In re Guttierez*, 248 B.R. 287, 292 (Bankr. W.D.Tex.2000) (explaining the purpose of the statute and citing to relevant legislative history). A petition preparer is defined as "a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing." 11 U.S.C. § 110(a)(1). A "document for filing" includes "a petition or any other document prepared for filing by a debtor in a United States bankruptcy court . . . in connection with a case under this title." 11 U.S.C. § 110(a)(2). The new statutory scheme contains a provision dealing with the compensation of petition preparers. Section 110(h) of the Bankruptcy Code specifically provides as follows:

(1) Within 10 days after the date of the filing of a petition, a bankruptcy petition preparer shall file a declaration under penalty of perjury disclosing any fee received from or on behalf of the debtor within 12 months immediately prior to the filing of the case, and any unpaid fee charged to the debtor.

(2) The court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee referred to in paragraph (1) found to be in excess of the value of services rendered for the documents prepared. An individual debtor may exempt any funds so recovered under section 522(b).

(3) The debtor, the trustee, a creditor, or the United States trustee may file a motion for an order under paragraph (2).

(4) A bankruptcy petition preparer shall be fined not more than $500 for each failure to comply with a court order to turn over funds within 30 days of service of such order.

11 U.S.C. § 110(h).

The UST has requested that the Court determine the reasonable value of the petition preparers' services in these ten cases, pursuant to 11 U.S.C. § 110(h)(2), and order that the petition preparers refund any amounts found to be

excessive to the debtors.[2] The UST has suggested that the reasonable value of services performed by petition preparers is generally no more than $100.

### B. The Evidence

Both Mills and Paquette filed written objections to the UST's motions. Winner did not. Mills argues that his fees are not excessive, that any attempt to set a fixed fee would be illegal and would constitute price fixing, and that retroactive disgorgement of fees would be unfair and unjust. Mills further indicated in his objection that his fees are dictated by many factors including the local area, competition, overhead costs, and his skills. Prior to the hearing, Mills had filed motions to continue based on the fact that the UST had not yet responded to his requests under the Freedom of Information Act. The Court denied the motions to continue. At the beginning of the November 2, 2000 hearing, the Court raised the continuance and price fixing issues. At that time, Mills withdrew his request for a continuance and his objection based on price fixing. Mills and the other petition preparers indicated that they were prepared to proceed with the hearing.

In his written objection, Paquette claimed that he provides services beyond petition preparation including counseling on alternatives to bankruptcy. He listed all of the steps that he takes in preparing a debtor's petition, which include reviewing all questions with the debtors; making a rough draft of the petition and schedules; typing the petition and schedules; making copies; accompanying the debtors to the filing; notifying the debtors' creditors of the debtors' bankruptcy filing; and accompanying debtors to their 341 meeting. Paquette further notes that none of his customers have objected to his fees.

In support of his position, the UST introduced evidence through three witnesses, including two paralegals and a sole

practitioner. The evidence supports a finding that a paralegal working in an attorney's office, or as an independent consultant to an attorney, receives compensation in the range of $15 to $20 per hour. It is undisputed that these amounts represent gross payments to the individual providing the services and do not consist of any of the overhead costs associated with providing an office, equipment, and benefits to employees. The UST also introduced evidence that would support a finding that, in routine individual consumer cases involving fewer than thirty creditors, it takes between one and a half to two hours to prepare the bankruptcy petition, schedules, and statements as well as to make the requisite number of copies of these documents.

The evidence also demonstrated that paralegals in a law firm have limited contact with clients who are filing bankruptcy. One of the paralegals testified that she does not meet with the client at the initial meeting when information is obtained regarding the client's assets and liabilities nor does she meet with the client at the time the client reviews the completed documents before signing and filing with the Court. It was also clear from the paralegals' testimony that the attorneys field most of the telephone calls from their clients. In addition to testifying as to the amount of time they spent preparing a client's petition, the paralegals testified that the law firms paid for all photocopies. The law firms also paid for all overhead associated with the paralegals working in the attorneys' offices, including fringe benefits where applicable.

The UST presented evidence from a sole practitioner attorney who testified that she spends roughly four to five hours on a debtor's Chapter 7 case from start to finish. Her time includes the initial client meeting; preparation of the petition, schedules, and statements; review of the

---

**2.** The Court notes that 11 U.S.C. § 110(h)(2) requires the Court to order the turnover of any excess fees to the trustee in the first instance, not the debtor.

completed documents with the client; and attendance at the section 341 meeting. The sole practitioner testified that she charges $399 for her services. The initial consultation is free.

Mills presented detailed testimony as to the costs incurred by his petition preparer business. Mills testified that he spends between $30 and $32 to have the petition typed and approximately $26 to have copies made, which includes approximately $11 for travel to the copy store. Mills also testified as to his overhead costs. He testified that his costs per bankruptcy petition included telephone book advertising costs of $71, phone service costs of about $10, and office use costs of about $59. Taken together, Mills claims to have roughly $197 in costs associated with each bankruptcy case he prepares. Mills further testified that he should receive $60 per hour for his time as $60 is the amount law firms typically charge for paralegal time.

## C. Analysis

The issue before the Court is an issue of first impression in this jurisdiction. Other courts, however, have grappled with the issue of petition preparer compensation. Many courts have held that petition preparers' services are limited and that, as a result, their compensation must be similarly limited. *See, e.g., In re Landry,* 250 B.R. 441, 445 (Bankr.M.D.Fla.2000) ("Because the role of a petition preparer is so limited, the reasonable compensation they can receive similarly is limited."); *Guttierez,* 248 B.R. at 299 ("We hold that (1) § 110 only permits bankruptcy petition preparers to 'type' dictated or handwritten documents that have been prepared prior to the debtor seeking the assistance of the scrivening/typing service, and (2) a reasonable fee for typing services, under § 110, cannot exceed $50.00."); *In re Wagner,* 241 B.R. 112, 122 (Bankr.E.D.Pa.1999) ("The fair value of [the petition preparer's] services as a mere typist and copier, especially in light of the fact that we are informed that blank Schedules can be obtained in carbon

sets for less than $5.00 and need not be typed, is no more than $50.00."); *In re Bradshaw,* 233 B.R. 315, 323 (Bankr. D.N.J.1999) (stating that "petition preparers may only receive fees for their typing services"); *In re Moore,* 232 B.R. 1, 11 (Bankr.D.Me.1999) ("All [the petition preparer] was allowed to do was to help [the debtor] organize her simple affairs and fill out her bankruptcy forms."); *In re Mullikin,* 231 B.R. 750, 753 (Bankr.W.D.Mo. 1999) ( "The work a petition preparer may do is simply to type forms and file documents."); *In re Hartman,* 208 B.R. 768, 780 (Bankr.D.Mass.1997) ("Because bankruptcy petition preparers may only offer typing services to debtors and may not give legal advice, this Court draws a similar comparison to secretaries for such preparers and finds that petition preparers are entitled to an hourly rate of $20.00."); *In re Burdick,* 191 B.R. 529, 537 (Bankr. N.D.N.Y.1996) ("Keeping in mind that the only legitimate service performed by [the petition preparer] was the actual typing of the petitions, the Court finds that $50 is a reasonable fee for having a Chapter 7 petition, schedules and statement of affairs, such as those in evidence, typed."). In fact, some courts have limited fees by establishing an hourly rate or a cap on total compensation. *See, e.g., Guttierez,* 248 B.R. at 299 (holding that fees cannot exceed $50); *Wagner,* 241 B.R. at 122 (capping fees at $50); *Mullikin,* 231 B.R. at 753 (holding that "absent special or extraordinary circumstances, petition preparers may not charge in excess of $150.00 for their services, including any and all expenses such as photocopying, messenger or courier services, postage, telephone, etc."); *Hartman,* 208 B.R. at 780 (limiting petition preparers to an hourly rate of $20); *In re Kassa,* 198 B.R. 790, 792 (Bankr.D.Ariz.1996) (determining that $16.82 per hour is reasonable compensation for petition preparers); *In re Cordero,* 185 B.R. 882, 886 (Bankr. M.D.Fla.1995) (holding that $50 was a reasonable fee to be charged by a non-lawyer, petition preparer). *See also In re Ali,* 230 B.R. 477, 484 (Bankr.E.D.N.Y.1999) ("The

Court finds that the reasonable value of [the petition preparer's] services was $25 in each of these cases because he filed only skeletal petitions for Debtors which, while facially sufficient to invoke the protection of the automatic stay, were insufficient to support a viable Chapter 13 filing in either case.").

Other courts have declined to adopt a blanket rule regarding petition preparer fees. For example, in the District of Maine, the bankruptcy court has declined to adopt a rule regarding fees indicating instead that the court would continue to monitor petition preparers' practices and fees presumably on a case by case basis. *See Consolidated Memorandum Regarding Bankruptcy Petition Preparers*, 1997 WL 615657 (Bankr.D.Me. Sept.19, 1997). Chief Judge Haines put petition preparers on notice, however, that they "must be ready to present, on demand, itemized statements of services rendered, with detail comparable to that provided by attorneys asked to justify their fees in this court." *Id.*, 1997 WL 615657 at *3.

■■■ The Bankruptcy Code defines a petition preparer as "a person, other than an attorney or an employee of an attorney, who prepares a document for filing." 11 U.S.C. § 110(a)(1). Once a person performs services that bring him or her within that definition, they are subject to the provisions of the Bankruptcy Code governing petition preparers. Based upon the evidence in this proceeding, it appears that petition preparers may provide services beyond only typing services. The extent of the services that may be provided by a petition preparer is not before the Court in this proceeding. While the Court does not believe that a petition preparer is limited only to providing typing services, it is appropriate to provide some guidance to petition preparers and the UST on the reasonableness of petition preparer fees for preparation of "documents for filing" within the meaning of section 110(a)(2) of the Bankruptcy Code. *See* Section III.D below for a discussion regarding other services.

■■■ Having considered the evidence before it, the Court finds that $20 per hour is a reasonable hourly labor charge by petition preparers for their time spent meeting with clients, typing the documents, and reviewing the documents prior to signing, tasks which most courts have held are permitted by the statute. The Court also finds that petition preparers should be able to recover their overhead costs in conducting their petition preparation businesses. *See Landry,* 250 B.R. at 446 (acknowledging that labor and overhead may be factored into a petition preparer's compensation if appropriate evidence is presented). Overhead costs would include such items as telephone service, photocopy machines, electricity, and employee benefits. Mills' testimony does not provide a sufficient evidentiary basis for determining overhead costs because it is limited to his particular cost structure and there was no evidence suggesting that his costs were an indicator of the value of the contribution of his overhead to the services provided. In the absence of any better evidence, the Court finds that fifty percent of a reasonable wage, or $10 per hour, is a reasonable amount for overhead. Accordingly, the Court holds that $30 per hour is a reasonable rate to be charged by a petition preparer. The Court notes that this amount may be subject to change upon receipt of more complete evidence on overhead costs or on account of inflation and other economic influences. *See Guttierez,* 248 B.R. at 299 n. 32.

In addition, the Court believes that petition preparers should be able to perform their petition preparation services in a routine individual or joint consumer case in five hours or less. The Court takes into account the UST's evidence that the petition, schedules, and statements can be typed in one and a half to two hours and the Court's observation that additional time needs to be spent with a client at an initial meeting and after the documents

have been completed. Accordingly, the Court holds that, in general, petition preparers should be able to provide their petition preparation services in a routine individual or joint consumer bankruptcy case for $150 or less.

■■■ The Court also holds that in the future petition preparers must be prepared to justify their fees with itemized statements of the services rendered with detail comparable to that provided by attorneys who are required to seek approval of their fees from the Court. *See* LBR 2016–1 and 2016–2. *See also Consolidated Memorandum,* 1997 WL 615657 at *3 (citing D.Me. LBR 2016–1). Petition preparers must make these itemized statements available upon request by either the Court or the UST. The Court encourages the UST to continue to monitor the practices and fees of petition preparers as envisioned by the statute. *See* 11 U.S.C. § 110(h)(2) and (3).

■■■ Because there was no guidance in this jurisdiction regarding the appropriate fee to be charged by petition preparers prior to the issuance of this opinion, the Court will not order the disgorgement of any fees collected by the petition preparers in the ten cases currently before the Court or in any case that was filed prior to the date of this opinion. The Court believes it would be inequitable to require the disgorgement of fees in the ten cases before the Court where the UST failed to allege in his motions that the petition preparers failed to prepare the documents accurately and competently or that debtors in these cases were harmed by any of the petition preparers' acts. *Cf. Hartman,* 208 B.R. at 780; *Bradshaw,* 233 B.R. at 325 (finding that the petition preparers' services had "absolutely no value" and the debtors were "victimized" by the petition preparers' "fraudulent, unfair and deceptive actions"); *Ali,* 230 B.R. at 484 (indicating that the petition preparers' services were performed "shoddily"); *In re Hobbs,* 213 B.R. 207, 216 (Bankr.D.Me.1997) ("The documents [the petition preparer] prepared were slipshod and sloppy. The forms he furnished were out of date. The debtors' schedules and statements omitted significant information, such as exemption claims for the assets (i.e., home, car, tools) they had filed for Chapter 13 to protect. To make matters worse, the schedules and statements were not filed within fifteen days of the petition."); *Mullikin,* 231 B.R. at 754 (noting the errors and deficiencies in the schedules and matrix). For that reason, the Court finds it unnecessary to conduct a detailed hearing with respect to whether the fees in any of these ten cases exceed the value of the services provided. Of course, if the UST has any basis for making such allegations in any other cases filed in this Court that were prepared by Mills, Winner, Paquette, or any other petition preparer, he can file an appropriate motion seeking such a determination and disgorgement.

■■■ The Court wants to emphasize that it is not limiting the compensation that a bankruptcy petition preparer may charge in any particular case but, rather, the Court is simply setting a cap, which, if exceeded, requires the petition preparer to file an application with the Court seeking approval of such higher fees. In addition, nothing in this opinion prevents the UST from reviewing fees charged by petition preparers under the authority of section 110 of the Bankruptcy Code regardless of the fee charged.

### D. Other Services Provided

■■■ The extent of services which petition preparers may provide their clients is not before the Court in this consolidated proceeding. Petition preparers may not provide legal advice and services because they are not licensed to do so. *See* 11 U.S.C. § 110(k); RSA 311:7 and 311:7–a to 7–f. However, nothing in section 110, or its legislative history, prohibits petition preparers from providing services beyond the preparation of "documents for filing" but short of providing legal advice.

None of the motions filed by the UST allege that any of the petition preparers in this proceeding have provided legal advice or services. Accordingly, the Court need not decide what services may be provided by a petition preparer that do not constitute providing legal advice.

■■■■ The Court would further like to note that it is not making any ruling on the fees that a petition preparer may charge for performing services other than preparing "documents for filing" in a bankruptcy proceeding, e.g., fees charged for debt counseling. The Court notes, however, that fees collected for other services must be disclosed pursuant to 11 U.S.C. § 110(h)(1) if they are collected within one year preceding a debtor's bankruptcy and such fees are subject to review and disgorgement pursuant to 11 U.S.C. § 110(h)(2) if found to be excessive. Any such additional fees must represent reasonable compensation for actual services rendered to a petition preparer's customer and must not simply be a scheme to avoid the Court's ruling that $150 is the presumptive value of the services provided in connection with the preparation of documents in a routine individual or joint consumer bankruptcy case.

## IV. CONCLUSION

For the reasons outlined above, the Court will grant in part and deny in part the UST's motions. The UST's motions are granted to the extent that the Court holds that a reasonable fee by petition preparers for the preparation of documents is $30 per hour. The Court also holds that, in general, it should take no more than five hours to prepare a debtor's bankruptcy petition. Thus, the total fee for a petition preparer to prepare documents in a routine individual or joint consumer bankruptcy case should not exceed $150. If, however, a petition preparer believes that a particular case will require more than five hours to prepare, the petition preparer must file an itemized application for compensation similar to that required of attorneys. In those cases, the disclosure set forth in the petition preparer's disclosure of compensation filed with the Court, pursuant to 11 U.S.C. § 110(h)(1), shall be insufficient.

The UST's motions are denied to the extent that they request the disgorgement of fees collected by the petition preparers. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. The Court will issue a separate order consistent with this opinion.