In re Evelyn L. **MOFFETT, Kristina Crawford, Freddie Dwayne Turner and Lynette Turner, Debtors.**

Nos. 01–30552(1)7, 01–30971(2)7, 01–31075(2)7.

United States Bankruptcy Court, W.D. Kentucky.

May 11, 2001.

808

funds. Finally, this Court will certify violations of 11 U.S.C. § 110 to the District Court pursuant to subsection 110(i)(1).

## FACTS

### Evelyn L. Moffett

Evelyn L. Moffett filed her Chapter 7 bankruptcy on February 2, 2001. Renee Yarrington signed the petition as a non-attorney petition preparer and provided her address and social security number. She also filed a declaration that Ms. Moffett had agreed to pay $150 for her services, but this fee was unpaid as of the filing date.

At a hearing before Judge Cooper, Ms. Yarrington testified that Ms. Moffett's case was the first petition she had prepared as a non-attorney petition preparer (Transcript of hearing in the Evelyn Moffett case before Judge Cooper on March 6, 2001, hereinafter referred to as Transcript 1, at p. 9). She provided Ms. Moffett with a worksheet to get most of the necessary information for the petition, so she didn't have to ask Ms. Moffett too many questions (Transcript 1 at p. 13–14). Ms. Moffett signed a contract with Ms. Yarrington which states, "I am not an attorney and can not give you legal advice." Ms. Yarrington had Ms. Moffett sign the form entitled "Notice to Individual Consumer Debtor" but did not explain the different bankruptcy chapters as "that would be giving legal advice." (Transcript 1 at p. 14). She testified that she provided a copy of the petition to Ms. Moffett (Transcript 1 at p. 9).

Ms. Yarrington stated that she received a money order made out to the United States Bankruptcy Court from Ms. Moffett for the filing fees and that she (Ms. Yarrington) filed the petition with the Court (Transcript 1 at p. 11–12). This is the only bankruptcy that Ms. Yarrington has filed

Evelyn L. Moffett, pro se.

John Wilson, Louisville, KY, trustee.

### MEMORANDUM–OPINION AND ORDER

J. WENDELL ROBERTS, Bankruptcy Judge.

These three consolidated Chapter 7 bankruptcy cases are before the Court sua sponte to determine whether Renee Yarrington, a paralegal who assisted in the preparation and filing of these cases, has engaged in the unauthorized practice of law or has violated any of the requirements for non-attorney petition preparers pursuant to 11 U.S.C. § 110. For the reasons set forth below, this Court finds that Ms. Yarrington has violated subsection § 110(f)(1) by including the term "legal" in her advertising, and has violated subsection § 110(g)(1) by collecting Court fees on behalf of one debtor. She has also engaged in the unauthorized practice of law (and thereby also violated subsection § 110(i)) by providing legal advice to these debtors on exemptions and other matters, and by exceeding her role as a "typist" by preparing portions of the petitions herself, especially Schedule C. This Court enjoins Ms. Yarrington from further engaging in conduct prohibited by 11 U.S.C. § 110 and assesses a $100 fine against her for violating § 110(f)(1). In addition, this Court enjoins Ms. Yarrington from charging more than $20 per hour or a maximum fee of $100 for typing a bankruptcy petition. She is further ordered to turn over all fees paid to her in these cases to the bankruptcy trustee pursuant to § 110(h)(2). Debtors shall be permitted to exempt these

with the Court for a client. She did so in this case only because Ms. Moffett was old and did not understand how to do it herself (Transcript of hearing in the Crawford and Turner cases before Judge Roberts on March 15, 2001, hereinafter referred to as Transcript 2, at p. 56). Ms. Yarrington testified that with other clients, she will only take the filing fee money if it is a money order made out to the Court (Transcript 1 at p. 12). She testified that she had been contacted by one of Ms. Moffett's creditors concerning reaffirmation, but she advised the creditor that she was not an attorney and they would have to contact Ms. Moffett directly (Transcript 1 at p. 13). Ms. Yarrington testified that Ms. Moffett provided a list of property and values, but that she used her own expertise and knowledge to fill out the exemptions on Schedule C (Transcript 1 at p. 16). Ms. Moffett told her which debts were secured and unsecured (Transcript 1 at p. 17–18). Ms. Yarrington determined from reviewing the debtor's paperwork that Mildred Moffett should be listed as a codebtor. This was not discussed with the Debtor (Transcript 1 at p. 18–19) Ms. Yarrington testified that it took her two to three hours to prepare Ms. Moffett's petition, and that she met with Ms. Moffett for twenty minutes initially and spent another half-hour in phone calls to the Debtor to get more information (Transcript 1 at p. 20–22).

Ms. Yarrington also testified that she obtained an associate degree as a paralegal from Pikes Peak Community College in May 2000 and that she has taken additional courses on bankruptcy law in Colorado. She has worked at two attorneys' law offices where she has prepared bankruptcy petitions (Transcript 1 at p. 6–8). She presents herself on her business card as "Renee Yarrington, Paralegal". She advertises her services in The Thrifty Nickel newspaper as follows:

Bankruptcies / can't afford an attorney? Will prepare and file a chapter 7 for small fee plus filing cost.

She will answer specific questions about what information goes into the petition but will not give "legal advice" (Transcript 1 at p. 15). She further testified that "... I know what goes on each of these schedules because not only did I take classes for this stuff, but I've also worked where I know what goes where. I mean, that's why they're hiring me, because I know what goes on this." (Transcript 1 at p. 18–19).

*Kristina Crawford*

On February 22, 2001, Kristina Crawford also filed a Chapter 7 bankruptcy with the assistance of Renee Yarrington. Ms. Yarrington properly identified herself as a non-attorney petition preparer and declared that Ms. Crawford paid $150 for her services. These fees were also listed in the Debtor's Statement of Financial Affairs as payments related to the bankruptcy. Ms. Crawford testified at a hearing before this Court that she contacted Ms. Yarrington after seeing an ad in The Thrifty Nickel. She had already seen a lawyer and had completed a form given to her by the lawyer's paralegal on which she had listed her secured and unsecured creditors. (Transcript 2 at p. 7–8, 14–15). The lawyer's office had also given her a printed list of exemptions and Ms. Crawford picked out the exemptions she thought applied to her property. This list had been completed before she met with Ms. Yarrington (Transcript 2 at p. 9–11). The Notice to Individual Consumer Debtors that was attached to the petition is not signed by the Debtor.

Ms. Crawford testified that she met for thirty minutes with Ms. Yarrington initially, spoke to her on the phone many times and met with her briefly to sign the petition (Transcript 2 at p. 11–12). Ms. Yar-

rington called her to get more information on her creditors, such as the date an account was incurred or a more complete address (Transcript 2 at p. 15–16). It took Ms. Yarrington about six hours to complete Ms. Crawford's petition (Transcript 2 at p. 63–64). Ms. Crawford did not know what Schedule D or F was, but gave Ms. Yarrington a list of her secured and unsecured creditors (Transcript 2 at p. 13–14). Ms. Crawford had also discussed reaffirmation of her car loan with the lawyer's paralegal, but did not discuss this with Ms. Yarrington (Transcript 2 at p. 16).

*Amy Lynette Turner and Freddie Dwayne Turner*

Amy and Freddie Turner filed a joint Chapter 7 bankruptcy on February 28, 2001. Renee Yarrington signed the petition as a non-attorney preparer and properly disclosed her fee of $150. At the hearing, Ms. Turner testified that Ms. Yarrington charged them an extra $10 for a copy of the petition, but Ms. Yarrington stated that this $10 was included in her $150 fee. (Transcript 2 at p. 35, 52–53). Shortly before filing bankruptcy, the Turners had quitclaimed land back to the Kentucky Land Company, a secured creditor. Ms. Turner orally asked Ms. Yarrington whether to include this creditor in the bankruptcy anyway, as she believed they still had liability on this debt (Transcript 2 at p. 37–40). Ms. Turner had a consultation with an attorney prior to retaining Ms. Yarrington, who explained exemptions to her and gave her a list of items that could be exempted. Ms. Turner completed this list of property and gave it to Ms. Yarrington, but Ms. Yarrington assigned the appropriate exemption statutes to the property while preparing the petition (Transcript 2 at p. 41–44). Ms. Turner met with Ms. Yarrington initially for twenty to thirty minutes, and she and her husband met with Ms. Yarrington for about 15 minutes to sign the petition (Transcript 2 at p. 49). The Notice to Individual Consumer Debtors is only signed by Ms. Turner.

Ms. Yarrington testified that it took her ten to twelve hours to complete the Turner petition, because they had many creditors and she had to call Ms. Turner many times because her information was not complete (Transcript 2 at p. 54–55). Ms. Turner mailed the petition to the Court, along with a money order for the filing fees (Transcript 2 at p. 49–50). Ms. Yarrington was contacted by Green Point Credit, one of the Turners' creditors, but she told them she was only a paralegal and could not discuss the case or the debt with them (Transcript 2 at p. 56–57).

Ms. Yarrington testified that if a client did not provide her with forms already filled out, she would give them worksheets from Collier's to complete. However, she stated that so far, all of her clients came to her with worksheets already completed (Transcript 2 at p. 57–58). She further testified that prior to her hearing before Judge Cooper, she was unaware that paralegals were not permitted to prepare Schedule C, and admitted that she prepared the list of exemptions in the Turner case (Transcript 2 at p. 60–61). In the future, Ms. Yarrington stated that she would give clients a list of exemptions and let them apply the statutes to their property. She will not correct this information if it is wrong. (Transcript 2 at p. 64–66).

### LEGAL DISCUSSION

11 U.S.C. § 110 was enacted as part of the Bankruptcy Reform Act of 1994 and became effective for all cases filed after October 22, 1994. This legislation sought to address the proliferation of non-attorney bankruptcy petition preparers who are not working with or supervised by an attorney. The statute sets standards

for and limitations on these preparers to prevent them from providing legal advice and engaging in the unauthorized practice of law. H.R.Rep. 103–834, 103rd Cong. (2nd Sess.1994), U.S.Code Cong. & Admin.News 1994, p. 3323. *See also Ferm v. United States Trustee (In re Crawford),* 194 F.3d 954, 960 (9th Cir.1999), *cert. denied,* 528 U.S. 1189, 120 S.Ct. 1244, 146 L.Ed.2d 102 (2000) ("... 110 was enacted *to remedy what was perceived to be wide-spread fraud and unauthorized practice of law in the BPP industry.").

The statute requires the petition preparer to sign the petition and provide his or her address and social security number, give a copy of the petition to the debtor, and disclose any fees received from the debtor within the past twelve months. 11 U.S.C. §§ 110(b)(1), (c)(1), (d)(1) and (h)(1). The petition preparer is proscribed from executing any documents on behalf of a debtor, shall not advertise using the term "legal" or any similar term, and shall not collect any Court filing fees from the debtor. 11 U.S.C. §§ 110(e)(1), (f)(1) and (g)(1).

For most of these requirements, the statute allows the Court to impose a $500 fine for each violation. 11 U.S.C. §§ 110(b)(2), (c)(3), (d)(2), (e)(2), (f)(2) and (g)(2). The Court may also disallow and order the turnover of any petition preparer fee found to be excessive. 11 U.S.C. § 110(h)(2). In addition, the Bankruptcy Court shall certify all violations of this section to the District Court, and a debtor, trustee or creditor may then move that Court for actual damages, a penalty of $2,000 or twice the fees paid to the petition preparer, whichever is greater, and attorneys' fees and costs. 11 U.S.C. § 110(i)(1). The Bankruptcy Court may enjoin the petition preparer from engaging in further violations of the statute, or may permanently enjoin a petition preparer from preparing any petitions in the future. 11 U.S.C. § 110(j)(1).

This Court finds that Ms. Yarrington has violated several provisions of 11 U.S.C. § 110 in these three cases, although it appears that she has made a sincere attempt to comply with its requirements. First, Ms. Yarrington accepted a money order for the Court costs in Ms. Moffett's case, which is a direct violation of 11 U.S.C. § 110(g)(1). This is not Ms. Yarrington's usual procedure. She accepted the money (and filed the petition itself) in a good faith effort to assist an elderly client who had a limited understanding of the bankruptcy process. In addition, it appears that Ms. Yarrington may have accepted money orders made out to the Bankruptcy Court clerk in advance of preparing petitions in the other two cases. Her standard contract with clients reads, at paragraph 3, "A mandatory filing fee of $200.00 is to be paid *before* any work will be started on your Chapter 7. This fee will be used to file your Bankruptcy with the Bankruptcy Court. It is preferred that a money order be made payable to the United States Bankruptcy Court for this amount."

Whatever Ms. Yarrington's intentions, Section 110 precludes her from accepting Court filing fees from any debtor for any reason. Nor may she hold a money order made out to the Court while preparing the petition. Her job is solely to type the petition. She should then give the petition back to the client for filing. There is no need for Ms. Yarrington to have anything to do with the filing fee money, and she should not be filing the petitions for her clients. The Court declines to fine Ms. Yarrington for this violation under the circumstances, but enjoins her from accepting (or holding) any Court fees in the future.

Secondly, this Court finds that Ms. Yarrington has violated 11 U.S.C. § 110(f)(1) by advertising herself as a paralegal. Although her newspaper advertisement does not contain this term, her business cards do. Subsection (f)(1) prohibits a non-attorney petition preparer from using the word "legal" *or any similar term* in any advertisement. A Bankruptcy Court in Colorado recently found that use of the term paralegal violates both the letter and spirit of subsection 110(f). *In re Gomez,* 259 B.R. 379 (Bankr. D.Colo.2001). In that case, the petition preparer was doing business as Eagle Paralegals, LTD. The Court found that the term paralegal "incorporates the proscribed term 'legal' and connotes specialized legal expertise or knowledge. Petition preparer advertising must steer clear of any suggestion that the preparer will be offering legal services or insights." *Id.* at 385. *See also In re Brokenbrough,* 197 B.R. 839, 844 (Bankr.S.D.Ohio 1996) (doing business as Legal Aid Services prohibited); *Ross v. Smith (In re Gavin),* 181 B.R. 814, 817–818 (Bankr.E.D.Pa.1995), *adopted by District Court,* 184 B.R. 670 (E.D.Pa.1995) (business card describing employee as "paralegal assistant" led client to believe that preparer was working with or supervised by an attorney).

Subsection (f)(2) states that a petition preparer shall be fined not more than $500 for each instance of using the term legal in advertising. This Court fines Ms. Yarrington $100 for violating 11 U.S.C. § 110(f)(1) and further enjoins her from using the term legal *or* paralegal in any advertising, including her business cards. In the future, she may only advertise herself as a bankruptcy petition preparer without any reference to her paralegal training, since she is not permitted to use her paralegal skills in the purely clerical task of typing petitions.

This Court also finds that Ms. Yarrington has engaged in the unauthorized practice of law in preparing all three of these petitions. 11 U.S.C. § 110(k) makes clear that Section 110 does not permit activities that would be considered unauthorized practice under state law. Courts have found that the unauthorized practice of law by a bankruptcy petition preparer may constitute a fraudulent, unfair or deceptive act within the context of 11 U.S.C. § 110(i)(1). *In re Gomez,* 259 B.R. at 386–88; *In re Guttierez,* 248 B.R. 287, 294 (Bankr.W.D.Tex.2000). Thus, the unauthorized practice of law is also a violation of Section 110 that may allow a debtor, trustee or creditor to seek damages in the District Court.

While Federal Courts have inherent power to regulate practice in cases before them, Bankruptcy Courts look to state law to determine what constitutes the unauthorized practice of law. *United States Trustee v. Tank (In re Stacy),* 193 B.R. 31, 38 (Bankr.D.Or.1996); *In re Lyvers,* 179 B.R. 837, 840 (Bankr.W.D.Ky. 1995). In *Lyvers,* this Court reviewed Kentucky law in determining that another bankruptcy petition preparer had engaged in the unauthorized practice of law.

The practice of law is defined by Kentucky Supreme Court Rule 3.020:

> The practice of law is any service rendered involving legal knowledge or legal advice, whether of representation, counsel or advocacy in or out of court, rendered in respect to the rights, duties, obligations, liabilities, or business relations of one requiring the services ...

In interpreting this Rule, the Kentucky Supreme Court has stated that the practice of law includes advice given to clients and the preparation and drafting of all legal instruments, where the work requires a consideration of the legal effects

of facts and conditions by a trained legal mind. *Hobson v. Kentucky Trust Co. of Louisville*, 303 Ky. 493, 197 S.W.2d 454, 460 (Ky.1946), *overruled on other grounds, Frazee v. Citizens Fidelity Bank and Trust Co.*, 393 S.W.2d 778, 783 (Ky.1964) (further restricting activities a fiduciary may engage in without violating unauthorized practice of law rules).

In *Lyvers*, we noted that Kentucky cases emphasize the need to protect the public from unauthorized activities by unskilled and untrained individuals. 179 B.R. at 840. We failed to emphasize what should be obvious—that in the context of the practice of law, only a *lawyer* licensed to practice law by the Kentucky Supreme Court is considered skilled and trained. *See* K.R.S. 524.130(1) ("... a person is guilty of unlawful practice of law when, without a license issued by the Supreme Court, he engages in the practice of law, as defined by the rule of the Supreme Court.").

In this case, Ms. Yarrington misconstrues *Lyvers* and argues that because she has a paralegal degree, she is skilled and trained to provide legal advice and services to clients. Under the Supreme Court rules, a paralegal may only provide legal advice and services if he or she is working under the supervision and direction of a licensed lawyer. Supreme Court Rule 3.700. Sub–Rule 2 of Rule 3.700 further states that a paralegal shall not be considered to be engaging in the unauthorized practice of law if he or she is supervised by a lawyer in performing legal services. *See also Turner v. Kentucky Bar Ass'n*, 980 S.W.2d 560, 564 (Ky.1998) (Interpreting SCR 3.700, Court finds that non-attorney workers' compensation specialists may dispense information by telephone, complete request for assistance forms, mediate disputes and assist claimants in filling out their claim forms *while under the direct supervision of an attorney*, but may not represent claimants in an adjudicatory tribunal). Because Ms. Yarrington has provided legal advice and services independent of a supervising attorney, she has engaged in the unauthorized practice of law.

Although unauthorized practice of law is defined by state law, many Bankruptcy Courts have addressed specific acts that constitute unauthorized practice of law by a bankruptcy petition preparer, and these cases provide a useful guide. Numerous Courts, including this one, have found that advising clients about exemptions, or determining which exemptions apply to a client's property, is the unauthorized practice of law. *Lyvers*, 179 B.R. at 839–40; *Gomez*, 259 B.R. 379 at 387; *Guttierez*, 248 B.R. at 296; *Stacy*, 193 B.R. at 39. Ms. Yarrington admits that she used her own expertise and knowledge to apply the appropriate exemptions for Ms. Moffett and for the Turners, and thereby engaged in unauthorized practice of law in those cases. Ms. Crawford had already completed Schedule C with the help of a paralegal at an attorney's office. Ms. Yarrington admits that she made a mistake by completing Schedule C in these cases. She suggests that in the future, she will simply provide clients with a list of exemptions and let them chose the ones that apply. Some Courts have found that a petition preparer can refer a client to a bankruptcy publication, but cannot direct their attention to a specific section. *Stacy*, 193 B.R. at 40. This Court finds it inappropriate for Ms. Yarrington to even provide a list of exemption statutes to clients. She is *only* authorized to type information exactly as provided by potential debtors, without any assistance from her regarding exemptions.

Ms. Yarrington also engaged in the unauthorized practice of law when

she reviewed Ms. Moffett's paperwork and determined that Mildred Moffett should be listed as a co-debtor. In addition, Ms. Yarrington apparently decided how to list the Turners' debt to Kentucky Land Company on the basis of her conversation about the nature of this debt with Ms. Turner. These are clear instances where Ms. Yarrington impermissibly used her legal skills to determine how the petition should be prepared. She is only permitted to type information exactly as debtors provide it to her, in written form on official bankruptcy forms.

Ms. Yarrington provided contradictory information concerning worksheets. In the hearing on Ms. Moffett's case, she stated that she used a worksheet to gather the necessary information. In the hearing on the Turner and Crawford cases, she stated that all three of these clients had already been to an attorney and had completed worksheets given to them by an attorney's office. She stated that if a worksheet was needed, she would use the Collier's worksheet that comes with the Top Form computer program she uses to prepare the petitions.

Some Courts have held that the use of any questionnaire to solicit information from the client which is then used to complete the official forms through use of a computer program is the unauthorized practice of law. *Hastings v. United States Trustee (In re Agyekum)*, 225 B.R. 695, 702 (9th Cir. BAP 1998); *In re Moore*, 232 B.R. 1, 8 n. 11 (Bankr.D.Me.1999). In fact, some Courts have held that the use of a computer program by a petition preparer amounts to the unauthorized practice of law, because this involves more than the simple typing or copying of information provided by the client onto official bankruptcy forms. *In re Farness*, 244 B.R. 464, 471 (Bankr.D.Idaho 2000); *In re Kaitangian*, 218 B.R. 102, 110 (Bankr.S.D.Cal.

1998). Even explaining to a client how to fill out schedules or a questionnaire, as Ms. Yarrington stated that she does, is considered to be beyond the scope of what a bankruptcy petition preparer may do without violating the unauthorized practice of law rules. *Guttierez*, 248 B.R. at 297–98.

■■■ This Court agrees that the use of a bankruptcy questionnaire to prepare a petition is the unauthorized practice of law, as transferring information from the questionnaire to the official bankruptcy forms invariably will require some legal judgment. This Court has no problem with Ms. Yarrington using a computer program, but she is only permitted to receive information from potential debtors on official bankruptcy forms. She may provide copies of these forms if necessary, since they are public documents, but may not provide any guidance as to how to fill out the schedules. In other words, the client should have already handwritten the entire petition, including all schedules, so that Ms. Yarrington only need type it.

■■ Because Ms. Yarrington has engaged in the unauthorized practice of law in all three of these cases, this Court finds that she has also committed fraudulent, unfair or deceptive acts in violation of 11 U.S.C. § 110(i)(1). In another case in which a preparer advertised her expertise as a paralegal, the Bankruptcy Court in Colorado explained its conclusion that unauthorized practice in the bankruptcy context is fraudulent, unfair and deceptive pursuant to subsection 110(i)(1):

> Then by using a patchwork of legal resources, reference to years of legal experience and a computer program, they embellish the illusion that prospective debtors receive the essential legal assistance necessary to obtain bankruptcy relief. This makes the disclosure to Ms. Gomez that Colorado Legal Works is not an attorney and cannot provide legal

advice particularly deceptive and misleading. The Arnolds simultaneously dispense advice which has potentially profound consequences while attempting to disclaim any responsibility for the advice given.

*Gomez,* 259 B.R. at 387. This Court is therefore authorized by subsection § 110(h)(2) to disgorge all fees paid to Ms. Yarrington in these three cases, as fees based on unauthorized practice of law are deemed excessive. *Lyvers,* 179 B.R. at 842; *In re Skobinsky,* 167 B.R. 45, 48 (E.D.Pa.1994). This Court therefore orders Ms. Yarrington to turnover all fees paid ($450 in total) to the appropriate trustee in each case. This Court further enjoins Ms. Yarrington pursuant to subsection § 110(j)(2)(A) from continuing to engage in the unauthorized practice of law (and consequent fraudulent, unfair or deceptive conduct) as outlined above in any future cases she may prepare in this District.

 Finally, this Court will address the issue of fees charged by Ms. Yarrington to prepare petitions. Ms. Yarrington charges $150 for each petition. She stated in Court that she relied on *In re Moran,* 256 B.R. 842 (Bankr.D.N.H.2000) in setting her fees. In *Moran,* the Court concluded that a petition preparer should be paid $20 per hour for his or her services and $10 per hour for overhead. The Court concluded that a preparer should be able to complete a routine petition in five hours. Therefore, the standard fee was set at $150, with the caveat that a preparer could petition the Court for a higher fee in a specific case. *Id.* at 850–51. Most Courts have concluded that bankruptcy petition preparer fees should be between $50 and $150, while other Courts have declined to adopt a specific rate. *See Moran,* 256 B.R. at 849–51, and *Guttierez,* 248 B.R. at

298–99, for a summary of reported decisions on this issue.

Ms. Yarrington testified that it took her three to four hours to complete Ms. Moffett's petition, about six hours for Ms. Crawford's petition, and ten to twelve hours to complete the Turners petition. This Court in the past has had a policy of allowing a maximum fee of $50 for petition preparers. Given the amount of time that Ms. Yarrington spent on these petitions, the Court agrees that the $50 fee may be too low. This Court will set an hourly fee of $20 with a maximum fee not to exceed $100 for all bankruptcy petition preparers.

### CONCLUSION

For the reasons outlined above, this Court concludes that Ms. Yarrington violated 11 U.S.C. § 110(g)(1) by accepting a money order for filing fees. The Court enjoins her from accepting any filing fees in the future, but declines to impose any fine for this violation. Secondly, this Court finds that Ms. Yarrington violated 11 U.S.C. § 110(f)(1) by advertising herself as a paralegal and hereby fines her $100 for this violation. The Court enjoins Ms. Yarrington from using the term legal or paralegal in any future advertising, including her business cards. Further, this Court finds that Ms. Yarrington has engaged in the unauthorized practice of law and has consequently engaged in fraudulent, unfair or deceptive acts pursuant to 11 U.S.C. § 110(i)(1). The Court also enjoins Ms. Yarrington from engaging in the unauthorized practice of law in any petitions she prepares in the future. Specifically, she is enjoined from providing any legal advice to clients, including but not limited to determining exemptions, providing a list of exemptions to clients, or answering questions about how to complete schedules. She shall not furnish clients with questionnaires or a copy of the com-

puter program, but must confine her role to typing petitions and schedules that have been handwritten by clients on official bankruptcy forms. Because Ms. Yarrington has engaged in the unauthorized practice of law, this Court finds that all fees paid to her in these three cases were excessive and shall be disgorged in full pursuant to 11 U.S.C. 110(h)(2). Ms. Yarrington is therefore ordered to turn over $150 to the appropriate trustee in each case. Finally, Ms. Yarrington is enjoined from charging more than $20 per hour or a maximum of $100 for typing any bankruptcy petitions in the future.